1  ETHAN BEARMAN, SBN 327490
   THE BEARMAN FIRM, INC.
2  9460 Wilshire Blvd, Suite 830
   Beverly Hills, California 90212
3  Telephone: (747) 232-7626
   Facsimile: (747) 344-1004
4  ethan@thebearmanfirm.com

5  Attorney for Plaintiff Allison M. Gill

6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

| 11 | ALLISON M. GILL, an individual | **CASE NO:** '23CV1892 LAB MSB |
|---|---|---|
| 12 | | **COMPLAINT FOR:** |
| 13 | Plaintiff, | 1. DISABILITY DISCRIMINATION; |
| 14 | v. | |
| 15 | DENIS R. MCDONOUGH, Secretary, | 2. FAILURE TO PROVIDE REASONABLE ACCOMODATION; |
| 16 | United States Department of Veterans Affairs; | 3. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS; |
| 17 | ROBERT L. WILKIE, an individual; | 4. RETALIATION; |
| 18 | DONALD J. TRUMP, an individual; DOES 1 through 50, Inclusive. | 5. HOSTILE WORK ENVIRONMENT; |
| 19 | | |
| 20 | | 6. RETALIATION FOR PROTECTED SPEECH AND ASSOCIATION; |
| 21 | Defendants. | 7. CONSPIRACY. |
| 22 | | |
| 23 | | **JURY TRIAL DEMANDED** |

24
25
26
27
28

Plaintiff ALLISON M. GILL, an individual, alleges as follows:

## I.   INTRODUCTION

As an employer, the United States Department of Veterans Affairs is not a tool of the executive branch to harass and terminate those who appropriately use their First Amendment rights under the free exercise clause in opposition to the sitting President. ALLISON M. GILL, as a Health Systems Specialist at the West Region TRICARE office in San Diego, California, provoked the ire of President DONALD J. TRUMP and his Secretary of the Veterans Administration, ROBERT L. WILKIE, by daring to create, host, and produce the anti-Trump and wildly successful, Webby-award winning Mueller, She Wrote podcast and run a very popular Mueller, She Wrote Twitter account under a pseudonym, A.G.

After a "witch hunt" to find out who this A.G. was, the chain of command was instructed to harass Dr. Gill and force her out of the job she had held across multiple administrations, making untenable, pretextual demands regarding her job requirements in violation of the First Amendment of the United States Constitution, Rehabilitation Act, and Title VII of the Civil Rights Act of 1964, as set forth below.

## II.   PARTIES

1. Plaintiff ALLISON M. GILL, hereinafter "**Plaintiff,**" is and at all times relevant to this Complaint an individual residing in the County of San Diego, State of California.
2. Defendant DENIS R. MCDONOUGH is sued in his official capacity as the present Secretary of the U.S. Department of Veterans Affairs, hereinafter "VA" or "Agency". As the Secretary, Defendant is responsible for employment practices and procedures within the Agency.
3. Defendant ROBERT L. WILKIE is sued in his personal capacity, he served as the Secretary of the U.S. Department of Veterans Affairs from 2018-2021.

4. Defendant DONALD J. TRUMP is sued in his personal capacity, he served as the President of the United States from 2017-2021.

5. The true names or capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1-50, are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiff prays for leave to amend this Complaint to show the true names or capacities of these Defendants if and when the same have been determined.

### III. JURISDICTION AND VENUE

6. This action seeks declaratory, equitable, and monetary relief against the named Defendant MCDONOUGH, in his official capacity as Secretary of the United States Department of Veterans Affairs for certain unlawful employment discrimination against Allison Gill, based upon her disability, and in retaliation for and opposition to her prior equal employment opportunity ["EEO"] activities, in violation of the Rehabilitation Act of 1973, as amended 29 U.S.C. §791 et seq., and related Executive Order 13164.

7. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331, 1343(4), 1346, 1361, 29 U.S.C. §794a and 42 U.S.C. §§2000e-5 and 2000e-16.

8. Venue is proper in this U.S. District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §§2000e-5(f) in that County of San Diego, California is where Plaintiff resides, and where a substantial part of the events or omissions giving rise to all the actions complained of herein took place.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff Gill exhausted all her administrative remedies and obtained a "right to sue" letter from the Department of Veteran's Affairs. The events described herein constitute claims made by Plaintiff in her EEO Complaint and Appeal to the Final Agency Decision.

10. First, Plaintiff filed a EEO Complaint Case No. 20DR-0010-2019104998 on November 21, 2019. The Agency issued its Final Agency Decision ["FAD"] on June 28, 2021.

11. Second, Plaintiff filed an Appeal No. 2021004344, filed on August 27, 2021, The Office of Federal Operations ["OFO"] issued its final order affirming Agency's final decision on July 17, 2023.

12. Copies of Plaintiff's "right to sue" letter and her EEO complaint are attached hereto and incorporated herein as Exhibit A and Exhibit B.

## V. GENERAL ALLEGATIONS
### 1. FACTUAL ALLEGATIONS

13. Plaintiff was hired at the VA in or around February 2009 as a G-5 Medical Support Assistant.

14. Six months later, in or around August 2009, Plaintiff was promoted to GS-9 and became the San Diego Call Center Supervisor.

15. In 2012, Plaintiff was promoted to GS-12 as the Outpatient Clinic Operations Chief for the Los Angeles VA Health System.

16. In 2015, Plaintiff was hired as a GS-14 by the Office of Interagency Health Affairs in DC (10P5) as the VA West Region TRICARE Liaison to the Department of Defense.

17. Plaintiff received outstanding job performance reviews and was known for creating a new system for achieving gains for minority representation in the VA.

18. In April 2019, Plaintiff learned that her position would be reassigned to Washington, D.C. based on the pretextual, alleged need for "face-to-face" communication.

19. Plaintiff informed her supervisors that she would decline a move to Washington, D.C. due to her husband's and mother's health issues.

20. Plaintiff had been asked to apply for her retiring supervisor's position in

Washington, D.C. in 2017, which she declined. This unequivocally signaled Plaintiff's intent to remain in her current location. The individual responsible for Plaintiff's termination and his supervisor were well aware of Plaintiff's prior refusal of the promotion.

21. On or about April 3, 2019, the Agency formally notified Plaintiff that her position was being reassigned to the Central Office in Washington, D.C. due to a functional reorganization, effective October 1, 2019.

22. On or about June 12, 2019, the Agency issued decision to reassign Gill's position to Washington, D.C. effective August 4, 2019, abruptly changing the previously effective date of October 1, 2019.

23. In direct contradiction to their pretext of reorganization, an equivalent position based out of Florida, was not required to relocate to the Central Office in Washington, D.C.

24. Plaintiff did not accept the management-directed reassignment on June 24, 2019.

25. On November 21, 2019, Plaintiff filed an EEO complaint alleging that the Agency subjected her to discrimination and a hostile work environment based on disability (posttraumatic stress disorder ("PTSD")), and in reprisal for filing the instant EEO complaint and requesting a reasonable accommodation when:

   a. On July 26, 2019, the Agency denied Plaintiff's reasonable accommodation request submitted on May 21, 2019, for 100% telework and instead granted three days per week of telework.

   b. On August 6, 2019, the Director told Plaintiff that he was conducting a fact-finding inquiry, denied her request for representation, and accused her of Family and Medical Leave Act ("FMLA") abuse.

   c. On August 6, 2019, Plaintiff learned that the Director accessed her social media accounts and obtained her videos and pictures.

   d. On August 6, 2019, the Director granted Plaintiff 100% telework, temporarily as an interim accommodation.

  e. On August 9, 2019, Plaintiff's supervisor Patrick Grady indicated that the 100% telework was only in place for 90 days.

  f. On August 15, 2019, the Director presented Plaintiff with another telework agreement with restrictive conditions, such as returning instant messages within ten minutes and answering telephone calls within five rings. Such restrictive telework agreement was not given to any other counterparts until after Plaintiff complained of its retaliatory nature.

  g. On August 19, 2019, management delayed Plaintiff's request for leave without pay ("LWOP").

  h. On November 27, 2019, Plaintiff's accommodation request was closed, and she was not reassigned.

26. At the conclusion of the investigation, the Agency provided Plaintiff with a copy of the ROI and notice of her right to request a hearing before an EEOC Administrative Judge.

27. Plaintiff timely requested a hearing but subsequently withdrew her request.

28. The timing of talks regarding Plaintiff's termination coincide around the release of the Mueller Report on April 18, 2019. At that time, the Plaintiff had already started a comprehensive 20-part series dissecting the findings of the Mueller Report on her Mueller, She Wrote podcast, something that the Trump's administration has demostrably and desperately tried to hide.

29. On information and belief this coordinated effort to find the host of the podcast, A.G., goes all the way to Defendants TRUMP and WILKIE, as what happened was part of a larger conspiracy.

30. Consequently, the Agency issued its FAD pursuant to 29 C.F.R. §1614.110(b).

31. The Agency concluded that Plaintiff failed to prove that she was subjected to discrimination as alleged.

32. Plaintiff filed the instant appeal and submitted a brief in support of her appeal.

33. The Agency opposed Complainant's appeal.

COMPLAINT

34. Office of Federal Operations ("OFO") issued its final order affirming Agency's final decision on July 17, 2023.

## 2. THE FIRST AMENDMENT RIGHTS OF FREE SPEECH AND ASSOCIATION

35. The First Amendment does not tolerate the suppression of speech based on what some may label an unpopular viewpoint of the speaker. (Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557, 579 (1995) ("While the law is free to promote all sorts of conduct in place of harmful behavior, it is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government.").)

36. Here, the Defendants sought to suppress speech that challenged and criticized their actions and policies. Through their treatment of the Plaintiff, including retaliatory measures and the fostering of a hostile work environment due to her politically critical podcast about the administration, they unmistakably infringe upon her First Amendment rights.

///
///
///
///
///
///
///
///
///

37. As discovered through a Freedom Of Information Act request, Defendant WILKIE was aware of the Plaintiff's Twitter account and podcast, as seen in this screenshot of the "VA Secretary's Stand-Up Brief30 October 2019" (highlighted for emphasis).



38. Defendant TRUMP through one of his many companies, has also acknowledged Plaintiff and her anti-Trump activities in the Complaint filed in Trump Media & Technology Group Corp. v. WP Company LLC, Case 8:23-cv-01535-TPB-AAS, United States District Court Middle District Of Florida, ¶ 17: "As was naturally and foreseeably intended by WaPo and Wilkerson, the Statements were republished millions of times on May 13, 2023 and thereafter, including by prominent anti-TMTG Twitter users, see, e.g.: https://twitter.com/**MuellerSheWrote**/status/1657865291794382848 ("HA! The

COMPLAINT

Russian tied to the bank that loaned Truth Social $8M to stay afloat also donated $30K to Ron DeSantis, and the bank is the '#1 trusted payment service' for the porn industry. Oh, the tangled web they weave")."

39. The First Amendment prohibits government retaliation for exercising one's right to engage in protected speech or association. "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct— i.e., that there was a nexus between the defendant's actions and an intent to chill speech." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016).

40. Here, the Plaintiff unmistakably engaged in constitutionally protected activity when she ran her political podcast, expressing dissenting views critical of the administration. Her podcast was a manifestation of her constitutionally protected right to free speech and political expression. The actions taken against her, including retaliation and the creation of a hostile work environment, were clearly designed to discourage her from continuing to exercise her protected speech, thus violating the First Amendment's prohibition against government retaliation for engaging in such protected activities. Further, Plaintiff had used a pseudonym from day one of the podcast in an effort to not violate the Hatch Act.

41. To prevail on a First Amendment Retaliation claim, a plaintiff need only show that the defendant "intended to interfere" with the plaintiff's First Amendment rights; the plaintiff is not required to demonstrate that "his speech was actually suppressed or inhibited". (Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).)

42. Plaintiff will demonstrate that the Defendants intended to interfere with her First Amendment rights by taking various actions, such as directed reassignment, the

absence of substantially similar job opportunities, and undue delays in processing her reasonable accommodation request. Additionally, they engaged in a retaliatory "fact-finding" mission concerning her personal activities in an effort to establish abuse of her Family and Medical Leave Act ("FMLA") leave. These actions were all taken in direct response to her political podcast, which expressed critical views of the administration. The Plaintiff has also experienced tangible harm as a result of these actions, including the hostile work environment and the obstacles placed in her path within the organization. Crucially, Plaintiff has fulfilled the requirements set by the legal precedent by showing that the Defendants intended to interfere with her First Amendment rights and that she suffered injury as a result, making her First Amendment Retaliation claim viable.

## FIRST CAUSE OF ACTION
## DISABILITY DISCRIMINATION
### (Against all Defendants)

43. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full herein.

44. The Rehabilitation Act of 1973, sections 501 and 504, as amended, makes it unlawful for a federal employer to discriminate against an employee on the basis of disability. A person is also protected from disability discrimination if they have a record of having such a condition or if they are viewed as having that condition by others. 29 U.S.C. §§ 791 et seq.

45. The term "disability" means, with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities of such individual. Major life activities include but are not limited to...working. 42 U.S.C §§ 12102 (1)A and 12102 (2)(A).

46. At the time the events described herein occurred, Plaintiff was an employee of the

COMPLAINT

Defendant Department of Veterans Affairs.

47. Defendants knew Plaintiff had a disability that limited Plaintiff's major life activities including, but not limited to Plaintiff's ability to work.

48. Plaintiff was able to perform the essential job duties of her position with reasonable accommodation for her disability. This reasonable accommodation included Defendants providing Plaintiff with a telework option.

49. Plaintiff was a "qualified individual" with a disability under the Rehabilitation Act.

50. Plaintiff was subjected to adverse employment actions.

51. Plaintiff's disability and/or medical condition was a motivating reason for the adverse employment actions taken against Plaintiff by Defendants.

52. Plaintiff was harmed.

53. These adverse employment actions were a substantial factor in causing Plaintiff's harm.

54. Plaintiff is informed and believes and based thereon alleges that the outrages conduct of said Defendants, described above, was done with malice by Plaintiff's supervisors and was ratified by the actions of the other individuals who were managing agents of said Defendants. These unlawful acts were further ratified by the Defendants as they were made aware of the continuing harm and consciously disregarded Plaintiff's rights with the intent, design, and purpose of injuring Plaintiff.

55. WHEREFORE, Plaintiff requests relief as hereafter provided.

## SECOND CAUSE OF ACTION
### FAILURE TO PROVIDE REASONABLE ACCOMODATION
**(Against all Defendants)**

56. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full herein.

COMPLAINT

57. Plaintiff is an individual with a disability under the Rehabilitation Act.
58. Plaintiff suffers from PTSD, Panic Disorder, and Major Depressive Disorder.
59. Plaintiff was experiencing panic attacks in the workplace which were interfering with her ability to think, concentrate, and communicate among other things.
60. Plaintiff was denied reasonable accommodation for her disability, and other adverse employment actions.
61. The office environment was triggering and exacerbating her condition.
62. Plaintiff's provider recommended full-time telework.
63. Plaintiff could perform all her essential functions of her job with the 100% telework.
64. In the months following Plaintiff's termination, all of her coworkers transitioned to telework due to COVID-related restrictions, providing clear evidence that 100% telework was indeed viable.
65. The Agency denied reasonable accommodation despite the initial mandate that Plaintiff's job had to be based in Washington, D.C. due to the need for in-person interactions, the Agency subsequently demanded that Plaintiff worked in-person at their San Diego office. This is in direct contradiction to Agency's primary justification for relocating the Plaintiff's position to D.C., while subsequently denying the Plaintiff's request for remote work in San Diego, citing the same imperative for in-person presence.
66. Furthermore, the Agency's denial of the accommodation was unreasonably delayed.
67. In this case, Plaintiff lost wages, benefits, and sick pay for her extended LWOP. She would not have suffered those losses if her request for telework had been facilitated.
68. WHEREFORE, Plaintiff requests relief as hereafter provided.

///

///

## THIRD CAUSE OF ACTION
## FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
### (Against all Defendants)

69. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full herein.

70. Plaintiff had at least one disability that limited his major life activities.

71. Plaintiff's disability status was made known to Defendants by Plaintiff.

72. Plaintiff requested a reasonable accommodation for her worsening disability through her doctor such that Plaintiff would be able to perform the essential job requirements.

73. Defendants failed to provide the requested reasonable accommodation of the known disability and/or medical condition of Plaintiff in violation of the Rehabilitation Act, Defendants refused to provide Plaintiff with full-time telework accommodation.

74. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential requirements of her job.

75. Defendants failed to participate in a timely, good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made, but rather were working to find ways and reasons to remove the Plaintiff from her employment.

76. Plaintiff was harmed.

77. Defendants' failure to participate in a good-faith interactive process was a substantial factor in causing harm to Plaintiff.

78. WHEREFORE, Plaintiff requests relief as hereafter provided.

# FOURTH CAUSE OF ACTION
## RETALIATION
### (Against all Defendants)

79. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full herein.

80. Plaintiff filed repeated complaints involving her disability discrimination against Defendants that were not only ignored but led to Plaintiff being subject to the retaliatory "fact-finding" regarding her conduct, denied her representation, and accused her of abusing FMLA leave. Defendants unlawfully retaliated against Plaintiff when she exercised her right and filed an EEO Complaint addressing the disability discrimination in her workplace.

81. Plaintiff was also assigned retaliatory work assignments, such as developing a spreadsheet of all the Agency contracted nursing homes in the US, complete with phone numbers, addresses, and contacts. Notably, all this information was readily accessible on the VA interactive website.

82. Plaintiff was also subject to unduly harsh and restrictive telework rules in retaliation for her disability discrimination complaints.

83. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered substantial mental and emotional distress, embarrassment, and overall discomfort.

84. Defendants committed the acts herein with malice against Plaintiff with the wrongful intention of injuring Plaintiff with conscious disregard to her health, safety, and rights.

85. WHEREFORE, Plaintiff requests relief as hereafter provided.

///

///

///

## FIFTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT
### (Against all Defendants)

86. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full herein.

87. Defendants harassed the Plaintiff because of her disability and her requests for accommodation.

88. Plaintiff is a qualified individual with a disability under the Rehabilitation Act.

89. Plaintiff was subject to numerous adverse and harassing actions that centered around her disability and the leave she took because of her disability.

90. On at least two separate occasions, members of the Plaintiff's chain of command made jokes about her PTSD during meetings, belittling the condition to such an extent that Plaintiff had to request her then-supervisor to intervene and request that they cease such conduct.

91. The Agency unreasonably denied Plaintiff's requests for accommodation and only granted her partial telework.

92. The Agency targeted the Plaintiff before she even returned from FMLA leave and had determined that she would be removed and charged with misconduct prior to any investigation.

93. The Agency harassed the Plaintiff by attempting to impose unduly harsh and restrictive telework rules.

94. The Agency was harassing the Plaintiff throughout the accommodation process and regarding her leave requests, by such the Agency directly impacted her working conditions.

95. Suddenly placing new restrictions on the Plaintiff or changing Plaintiff's status was particularly offensive given the nature of Plaintiff's condition.

96. This harassing conduct exacerbated Plaintiff's condition to the point where she was

no longer able to work in her position.

97. The VA increased her disability rating from 70% to 100%.

98. The Agency's harassment practices culminated in tangible employment actions and were sufficiently severe or pervasive to create a hostile work environment.

99. WHEREFORE, Plaintiff requests relief as hereafter provided.

## SIXTH CAUSE OF ACTION

**RETALIATION FOR PROTECTED SPEECH AND ASSOCIATION UNDER U.S. CONST., AMEND. I, 42 U.S.C. § 1983**

**(Against ROBERT WILKIE, DONALD J. TRUMP, and DOES 1 - 50)**

100. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full.

101. Plaintiff is informed and believes and thereupon alleges that defendants, and each of them, violated her constitutional rights as described in this Complaint, by retaliating against her, in retaliation for and as prior restraint of protected speech regarding matters of public importance, most notably her involvement in the political podcast "Mueller, She Wrote" and her Twitter account of the same name.

102. Plaintiff is informed and believes and thereupon alleges that Defendants WILKIE and TRUMP, violated her constitutional rights as described in this Complaint because of customs, policies, directives, practices, acts and omissions of authorized individuals. These customs, policies, directives, practices, acts and omissions included, but were not limited to, the maintenance of employment practices that allow for retaliatory actions for and prior restraint of protected speech and the maintenance of employment practices that encourage retaliation against and prior restraint of an employee for protected speech. These customs, policies, directives, practices, acts and omissions constitute gross negligence and/or deliberate indifference on the part of the Agency in its obligation to ensure the preservation

of an employee's constitutional rights.

103. The retaliatory conduct against Plaintiff, including but not limited to the retaliation for her protected speech and following adverse discriminatory employment actions, was a deliberate choice of action made from among various alternatives by the Defendants.

104. As a direct, foreseeable, and proximate result of Defendants' acts and omissions, Plaintiff has suffered substantial losses in earnings, and has suffered discrimination, mental and emotional distress, and discomfort, all to Plaintiff's damage in the precise amount of which will be proven at trial.

105. To bring a successful First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. (Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016) [quoting O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016).].)

106. Further, to prevail on such a claim, a plaintiff need only show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights; the plaintiff is not required to demonstrate that "his speech was actually inhibited or suppressed". (Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1288, 1300 (9th Cir. 1999).)

107. Plaintiff engaged in constitutionally protected activity.

108. Plaintiff spoke as a private citizen and not as a part of her official duties as a public employee.

109. The retaliation plaintiff must show an "adverse employment action," defined as a "materially adverse change in the terms and conditions" of employment. (Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 53 (2006).)

110. Starting with the Plaintiff's directed reassignment, continuing through failures to accommodate and engage in a timely interactive process, and culminating in the

imposition of overly restrictive teleworking conditions following the initiation of the fact-finding process, all of these actions collectively constitute adverse employment actions in retaliation against the Plaintiff's protected activity.

111. The Defendants' harassing and retaliatory employment actions had an objectively chilling effect on engaging in the protected activity.

112. Plaintiff's opposing political views, as expressed in her podcasting activity, were a substantial motivating factor in the Defendants' retaliatory conduct.

113. There is a clear nexus between the Defendants' lack of accommodation, discrimination, and other retaliatory actions and Defendants' intent to chill Plaintiffs' speech.

114. As a direct and proximate result of Defendants' actions, Plaintiff has suffered an irreparable injury for which there is not adequate remedy at law.

## SEVENTH CAUSE OF ACTION
## CONSPIRACY
### (Against ROBERT WILKIE, DONALD J. TRUMP, and DOES 1-50)

115. Plaintiff hereby repeats, realleges, and incorporates by this reference each and every allegation from each and every paragraph before and after this paragraph, as though said paragraphs were set forth in full.

116. A conspiracy is an agreement by two or more persons to commit a wrongful act for the purpose of harming another.

117. Plaintiff was harmed by DOES 1-50 and WILKIE'S retaliatory employment efforts and TRUMP is responsible for the harm because he was part of the conspiracy to commit retaliation for protected speech, and protected activities.

118. TRUMP was aware that WILKIE and DOES 1-50 planned to retaliate for protected speech.

119. TRUMP agreed with WILKIE and DOES 1-50 and intended that the retaliation for protected speech be committed.

120. All of the employment actions described above were pretextual move on the part of the Defendants to deprive Plaintiff of her civil rights.

## VI. **PRAYER FOR RELIEF**

121. Plaintiff prays this Honorable Court to declare and adjudge that Defendants' conduct alleged herein constitutes unlawful discrimination based on disability and/or retaliation for Plaintiff's protected activity of filing administrative EEO discrimination claims and opposing discrimination; and that Defendants violated Plaintiff's First Amendment Rights by retaliating for Plaintiff's free speech; and further that Defendants subjected Plaintiff to a hostile work environment by such actions, for which Plaintiff suffered damages.

WHEREFORE, Plaintiff prays for Judgment against Defendant as follows:

A. To declare Defendants' actions unlawful;
B. Order that the Defendants pay Plaintiff compensatory damages, including but not limited to, lost back pay and benefits plus interest, according to proof;
C. For general and special damages;
D. For punitive damages, as allowed by law, that will sufficiently punish, make and example of, and deter future conduct by Defendants;
E. Order that the Defendants pay the Plaintiff's attorney fees and costs of this litigation, related litigation and of the preceding administrative actions at the Agency level;
F. For an award of pre-judgment and post-judgment interest; and
G. For such other and further relief as the Court deems just and proper.

///
///
///

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 17, 2023                    By:    /s/ Ethan Bearman
                                                  Ethan Bearman, Esq.,
                                                  Attorney for Plaintiff