# TABLE OF CONTENTS
# EXHIBITS

1. **Exhibit A:** U.S. EEOC OFO Decision from 2023.07.17, Containing Provision
   9 pages     "Right to Request Counsel" (Z0815)

2. **Exhibit B:** Gill's Complaint of Employment Discrimination
   5 pages

---

COMPLAINT

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Allison Gill a/k/a
█████[1]
Complainant,

v.

Denis R. McDonough,
Secretary,
Department of Veterans Affairs,
Agency.

Appeal No. 2021004344

Hearing No. 480-2020-00639X

Agency No. 20DR-0010-2019104998

## DECISION

Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's June 28, 2021 final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Health Systems Specialist at the Agency's Medical Center in San Diego, California. In April 2019, Complainant learned that her position would be reassigned to Washington, D.C. based on the need for face-to-face communication. Complainant informed her supervisors that she would decline a move to Washington, D.C. due to her husband's and mother's health issues. On or about June 12, 2019, the Agency formally notified Complainant that her position was being reassigned to the Central Office in Washington, D.C. due to a functional reorganization, effective August 4, 2019. Complainant did not accept the management-directed reassignment. Report of Investigation (ROI) at 165, 217-18.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

On November 21, 2019, Complainant filed an EEO complaint alleging that the Agency subjected her to discrimination and a hostile work environment based on disability (posttraumatic stress disorder (PTSD)), and in reprisal for filing the instant EEO complaint and requesting a reasonable accommodation, when:

1. on July 26, 2019, the Agency denied Complainant's reasonable accommodation request submitted on May 21, 2019, for 100% telework, and it granted three days of telework instead;
2. on August 6, 2019, the Director told Complainant that he was conducting a fact-finding inquiry; denied her request for representation; and accused her of Family and Medical Leave Act (FMLA) abuse;
3. on August 6, 2019, Complainant learned that the Director accessed her social media accounts and obtained her videos and pictures;
4. on August 9, 2019, the Director granted Complainant 100% telework, temporarily for 90 days as an interim accommodation;
5. on August 15, 2019, the Director presented Complainant with another telework agreement with restrictive conditions, such as returning instant messages within ten minutes and answering telephone calls within five rings;
6. on August 19, 2019, management delayed Complainant's request for leave without pay (LWOP); and
7. on November 27, 2019, Complainant's accommodation request was closed, and she was not reassigned.[2]

At the conclusion of the investigation, the Agency provided Complainant with a copy of the ROI and notice of her right to request a hearing before an EEOC Administrative Judge. Complainant timely requested a hearing but subsequently withdrew her request. Consequently, the Agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b). The Agency concluded that Complainant failed to prove that she was subjected to discrimination as alleged.

Complainant filed the instant appeal and submitted a brief in support of her appeal. The Agency opposed Complainant's appeal.

ANALYSIS AND FINDINGS

*Standard of Review*

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chap. 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal

---

[2] On March 19, 2020, the Agency issued Complainant a decision to remove her, effective March 25, 2020. ROI at 464-5. Complainant's removal is not an issue in the instant EEO complaint.

determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

*Claims*

Through her attorney, Complainant contends that the Agency did not properly frame her claims when it accepted claims 1, 4, 5, 6, and 7 as discrete claims. While the Agency stated in the final decision that the wording was substantially similar to Complainant's wording, Complainant disputes that her claims were framed properly, and she requests that her claims be framed as: (1) a failure to accommodate and properly engage in the interactive process; and (2) a hostile work environment. However, a review of the Agency's final decision shows that it properly analyzed Complainant's allegations of a denial of a reasonable accommodation; disparate treatment; and a hostile work environment. As such, we decline to change the framing of Complainant's claims on appeal.

*Reasonable Accommodation (Claims 1, 4, 5, and 7)*

In order to establish that Complainant was denied a reasonable accommodation, Complainant must show that: (1) she is an individual with a disability; (2) she is a qualified individual with a disability; and (3) the Agency failed to provide a reasonable accommodation. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, EEOC Notice No. 915.002 (Oct. 17, 2002) (Enforcement Guidance). "The term 'qualified,' with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). An agency is required to make reasonable accommodation to the known physical and mental limitations of a qualified individual with a disability unless the Agency can show that accommodation would cause an undue hardship. See 29 C.F.R. §§ 1630.2(o), (p).

The Agency disputes that Complainant is a qualified individual with a disability. We will assume, for the purpose of analysis and without so finding, that Complainant is a qualified individual with a disability. Complainant initiated the reasonable accommodation process on April 29, 2019, when she requested fulltime telework, and she submitted medical documentation on May 22, 2019. ROI at 328, 165.

On July 26, 2019, the Agency informed Complainant that a review of the essential functions revealed that her position required face-to-face interactions to build effective relationships and to provide training, and it denied her request for fulltime telework (claim 1). Instead, the Agency offered three days of telework per week and notified Complainant that if she was unwilling to accept anything less than 100% telework, it was prepared to consider a reassignment search for positions with duties that can be performed while on 100% telework. ROI at 222, 225-6.

On appeal, Complainant disputes that Complainant's physical presence was an essential function of her position. However, we find that the Agency accommodated Complainant when it continuously granted her requests for FMLA and LWOP, or allowed her to telework, since May 9, 2019. Unpaid leave is a form of reasonable accommodation, whether or not provided under the FMLA. See Enforcement Guidance, at questions 16-21, 28.

Complainant was initially approved for FMLA leave from May 9, 2019, through June 14, 2019, due to her incapacitation, and it was extended through August 16, 2019. ROI at 535, 527. Complainant returned to work on August 5, 2019. ROI at 163. On or about August 9, 2019, the Agency issued a decision to grant fulltime telework through November 23, 2019, on an interim basis to give the Agency time to explore the possibility of a reassignment (claim 4). ROI at 257. However, on August 19, 2019, Complainant requested LWOP, starting the following day, and the record shows that Complainant remained on LWOP until January 31, 2020.[3] ROI at 390-2, 402-28.

The Rehabilitation Act provides that qualified individuals with a disability be granted an effective reasonable accommodation, but it does not entitle them to the accommodation of their choice. See Castaneda v. U.S. Postal Serv., EEOC Appeal No. 01931005 (Feb. 17, 1994); see also Enforcement Guidance at Question 9. In this case, while the Agency did not grant Complainant's preferred accommodation of fulltime telework until August 9, 2019, there is no evidence that the Agency denied her requests for FMLA leave or LWOP. ROI at 257.

Further, we find that the record does not support that fulltime telework was an effective accommodation. The record shows that Complainant teleworked fulltime from August 5-16, 2019. ROI at 395. However, Complainant submitted her request for LWOP on August 19, 2019. Despite giving Complainant her preferred accommodation of fulltime telework, she needed a different accommodation of LWOP, which the Agency granted.

In addition, Complainant had issues with her availability while teleworking, and the Director issued additional guidance with Complainant's approval to fulltime telework (claim 5), in an effort to manage her ability to work while teleworking. For example, Complainant was instructed to respond to instant messages within ten minutes and answer telephone calls by five rings. The Director informed Complainant that the requirements were to ensure that she was available during core hours and to meet clients' needs. When Complainant informed the Director that the restrictions aggravated her medical condition, he immediately withdrew them. The Director also stated that he provided the same telework guidance to all Medical Sharing Office employees. ROI at 185-6, 193, 267.

---

[3] The records end on January 31, 2020, but there is no indication that the Agency denied LWOP until Complainant's removal on March 25, 2020.

On appeal, Complainant argues that the restrictions were "obviously created for [Complainant] and only sent out to others after [she] alleged they were discriminatory." Complainant Appeal Brief at 19. However, Complainant cites to no evidence, and she only offers speculation. Further, the record shows that the Director previously informed a Human Resources Specialist and the Acting Executive Director of his concerns related to Complainant's ability to work while on a telework status. Complainant did not call into a staff meeting on May 9, 2019, and when the Director called her, she responded that her Wi-Fi was out and that she should have come into the office. Complainant also admitted that she had not seen the Director's email on her government-issued cellphone, and he advised her to use it to stay online. ROI at 368, 370. The record also confirms that the Director emailed the same instructions to the other employees ROI at 261-2.

The Agency conducted a reassignment search for ninety days and it administratively closed her reasonable accommodation request after it was unable to find a position (claim 7). ROI at 205-6. On August 22, 2019, Complainant's Clinical Psychologist provided that, given Complainant's military-related trauma, her Agency and Department of Defense-related work and situation were direct triggers of her trauma, and on September 18, 2019, he recommended that she remove herself from triggering situations, such as her military-related employment.[4] ROI at 283. Complainant also informed the Agency that she would only accept a position that was within her geographic area of San Diego and at her same grade level (GS-14), and the search was limited to Complainant's medical restrictions and search parameters. ROI at 283, 230-1. We find that the Agency fulfilled its obligation under the Rehabilitation Act with its reassignment search of a suitable non-military-related position for Complainant within the Department of Veterans Affairs.

To the extent that Complainant contends that the Agency unreasonably delayed her accommodation that she requested on April 29, 2019, the Agency officially granted her an alternative accommodation of FMLA leave on May 23, 2019, soon after she submitted her FMLA forms on May 22, 2019. ROI at 520. The Agency also quickly approved Complainant's provisional FMLA request on May 9, 2019, prior to receiving her supporting medical documentation. ROI at 522. As such, we find that there was no unreasonable delay in accommodating Complainant, and that she did not establish that the Agency failed to provide a reasonable accommodation.

*Disparate Treatment (Claims 2, 3, and 6)*

To prevail in a disparate treatment claim such as this, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). She must generally establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978).

---

[4] The evidence suggests that Complainant provided additional medical documentation to the Agency, but she only submitted the September 18, 2019 medical document for the ROI, and the August 22, 2019 document with her request to withdraw her hearing request.

The prima facie inquiry may be dispensed with in this case, however, since the Agency has articulated legitimate and nondiscriminatory reasons for its conduct. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Dep't of Veterans Affairs, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Holley, supra; Pavelka v. Dep't of the Navy, EEOC Request No. 05950351 (Dec. 14, 1995).

Assuming, arguendo, that Complainant established a prima facie case of discrimination based on disability, and in reprisal for protected EEO activity, we find that the Agency proffered legitimate, nondiscriminatory reasons for claims 2, 3, and 6. For claims 2 and 3, the Director explained that an employee informed him about a website involving a podcast that Complainant hosted. When the Director conducted an internet search, he found the podcast's website, with associated social media sites, containing information that appeared to directly conflict with Complainant's medical restrictions. For example, Complainant provided in her FMLA documentation that she was unable to have face-to-face interactions or hold conversations, or to interact with others in a meaningful way. However, the publicly available information showed Complainant at an out-of-town event in June on stage, leading a song/chant. The Director was advised that he should conduct a fact-finding session to explore the possible conflict. ROI at 183, 303-4.

During the fact-finding, Complainant confirmed that it was her in the pictures and videos, and she explained that the tour related to the podcast did not exacerbate her PTSD since they were not linked to her trauma. ROI at 311-17. The Director noted that Complainant was not a bargaining unit employee, and he was informed that she was not entitled to an attorney or representative during the fact-finding meeting. The Director added that he accepted Complainant's explanation, and he did not pursue the matter any further. ROI at 183, 189.

For claim 6, the Director denied any delay for Complainant's LWOP request, which was submitted on August 19, 2019, and began on August 20th. ROI at 188.

We find that Complainant has not shown that the proffered reasons were pretexts for discrimination. Pretext can be demonstrated by showing such weaknesses, inconsistencies, or contradictions in the Agency's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence. See Opare-Addo v. U.S. Postal Serv., EEOC Appeal No. 0120060802 (Nov. 20, 2007) (finding that the agency's explanations were confusing, contradictory, and lacking credibility, which were then successfully rebutted by the complainant), request for recon. denied, EEOC Request No. 0520080211 (May 30, 2008).

On appeal, Complainant asserts that she had been hosting the podcast for some time but that the Agency only chose to investigate her conduct after she requested FMLA leave and a reasonable accommodation.

However, the record shows that the Director only learned of Complainant's podcast activities on June 12, 2019, and he immediately contacted Human Resources for guidance. ROI at 183, 594-5. Complainant offers no contradictory evidence or any proof showing that the fact-finding was in retaliation for her protected EEO activity.

We find that Complainant did not cite to any evidence to show that the Agency's explanations were not worthy of belief. Rather, the record supports the reasons, such as the email informing the Director that there is no employee right to an attorney or representative for routine communications with a subordinate, including non-bargaining unit fact-finding meetings, and the Director's email approving Complainant's request for LWOP on August 20, 2019. ROI at 318, 265. Accordingly, we find that Complainant did not establish that the Agency discriminated against her based on her disability, or in reprisal for prior protected EEO activity, for claims 2, 3, or 6.

*Harassment*

As discussed above, we found that Complainant did not establish a case of discrimination on any of her alleged bases. Further, we conclude that a case of harassment is precluded based on our finding that Complainant did not establish that any of the actions taken by the Agency were motivated by her protected bases. See Oakley v. U.S. Postal Serv., EEOC Appeal No. 01982923 (Sept. 21, 2000). Accordingly, we find that Complainant did not show that the Agency subjected her to harassment based on her disability, or in reprisal for prior protected EEO activity.

CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final decision finding that Complainant did not establish discrimination as alleged.

STATEMENT OF RIGHTS - ON APPEAL
RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**.

A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at

https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you.

**You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_____
Carlton M. Hadden, Director
Office of Federal Operations


July 17, 2023
Date

# EXHIBIT B

OMB NO.: 2900-0716
EXPIRATION DATE: DEC 31, 2019
RESPONDENT BURDEN: 30 Min.

**COMPLAINT CASE NUMBER:**

## Department of Veterans Affairs — COMPLAINT OF EMPLOYMENT DISCRIMINATION

*Read the instructions on the reverse side of this form carefully before completing the front of this form.*

| | |
|---|---|
| **1. NAME** (Last, first, middle initial)(Please print) | Allison Gill |
| **2. EMAIL ADDRESS** | [redacted] |
| **3. MAILING ADDRESS** | San Diego, CA 92104 |
| **4a. WORK TELEPHONE NUMBER** (Include Area Code) | 619- [redacted] |
| **4b. PRIMARY TELEPHONE NUMBER** (Include Area Code) | 619- [redacted] |

**5. ARE YOU:**
- [X] A VA EMPLOYEE
- [ ] AN APPLICANT FOR EMPLOYMENT
- [ ] A FORMER VA EMPLOYEE

**6a. JOB TITLE, SERIES AND GRADE:** Heath Systems Specialist, GS-0671-14

**6b. SERVICE/SECTION/PRODUCT LINE:** Medical Sharing Office 10P5

**7. NAME AND ADDRESS OF VA FACILITY WHERE DISCRIMINATION OCCURRED:**
VA/DoD Medical Sharing Office
1575 I St. NW Rm 622
Washington DC 20420

**NOTE:** For each employment related matter that you believe was discriminatory you must list the bases (list one or more of the following): Race (Specify), Color (Specify), Religion (Specify), Sex (Male or Female), National Origin (Specify), Age (Provide date of birth), Disability (Specify), Genetic Information (including family medical history), and/or Reprisal for participating in the EEO process or opposing unlawful discrimination.

| 8. BASIS | 9. CLAIM(S) (What employment related claim(s) - personnel action(s), incident(s), or event(s) caused you to file this complaint? Briefly state the specific claim, personnel action and/or event that caused you to file this complaint. Use an additional sheet of paper if necessary. You should not include information that violates the Privacy Act of 1974 and the Health Insurance Portability and Accountability Act (HIPAA). Some examples are patient medical records, personal records of other VA-employees, etc.) | 10. DATE OF OCCURRENCE (Include the most recent date(s)) |
|---|---|---|
| Disability and Reprisal | See attached | August 6, 2019 to the present |

**11. REMEDIES SOUGHT** (Use an additional sheet of paper if necessary.)
See attached

| | |
|---|---|
| **12a. DO YOU HAVE A REPRESENTATIVE?** [X] YES  [ ] NO | **12c. PROVIDE THE NAME AND ADDRESS OF YOUR REPRESENTATIVE:** Cathy Harris and Kerrie Riggs, Kator, Parks, Weiser & Harris, PLLC, Washington, DC 20036 |
| **12b. IF "YES," IS HE OR SHE AN ATTORNEY?** [X] YES  [ ] NO | **12d. TELEPHONE NUMBER** (Include Area Code): 202- [redacted]  **12e. EMAIL ADDRESS:** [redacted] |

| | | |
|---|---|---|
| **13a. HAVE YOU CONTACTED AN EEO COUNSELOR?** [X] YES [ ] NO | **13b. NAME OF EEO COUNSELOR:** Claudia Mendez | **13c. DATE OF INITIAL CONTACT WITH ORM:** 8/6/2019 |

**14.** If you contacted an EEO Counselor more than 45 calendar days after the Date(s) of Occurrence, listed in item 10, or if this complaint is filed more than 15 calendar days after receipt of a Notice of Right to File a Discrimination Complaint, you must explain why you were untimely in seeking EEO counseling or untimely in filing a complaint. (Use an additional sheet of paper, if necessary.)

| 15a. HAVE YOU FILED A UNION GRIEVANCE ON ANY CLAIM(S) LISTED ABOVE? | 15b. IF "YES," LIST THE CLAIM(S) AND DATE GRIEVANCE FILED | 16a. HAVE YOU FILED AN APPEAL WITH THE MERIT SYSTEM PROTECTION BOARD (MSPB) ON ANY OF THE CLAIMS LISTED ABOVE? | 16b. IF "YES," LIST THE ISSUE(S) AND DATE MSPB APPEAL FILED. |
|---|---|---|---|
| [ ] YES  [X] NO | | [ ] YES  [X] NO | |

| 17a. HAVE YOU FILED THIS COMPLAINT WITH ANYONE ELSE? | 17b. IF "YES," PROVIDE THE NAME AND ADDRESS |
|---|---|
| [ ] YES  [X] NO | |

**18. SIGNATURE OF COMPLAINANT** (Sign in ink. Do not print.)
*Allison Gill by Cathy Harris, Representative*

**19. DATE:** 11/21/19

VA FORM MAR 2017 **4939**   SUPERSEDES VA FORM 4939, MAR 2013, WHICH SHOULD NOT BE USED.

## COMPLAINT OF EMPLOYMENT DISCRIMINATION INSTRUCTIONS
Read the following instructions carefully before you complete this form. Please complete all items on the complaint form.

**GENERAL:** Pursuant to the Equal Employment Opportunity Commission (EEOC) Title 29 Code of Federal Regulations (29 C.F.R.) §1614, VA Form 4939, Complaint of Employment Discrimination, can be used by VA employees, former employees and applicants for employment who file a formal Equal Employment Opportunity (EEO) complaint of discrimination. This regulation prohibits discrimination based on race, color, religion, gender (sex), national origin, age (40 years and over), physical or mental disability, genetic information (including family medical history), and/or reprisal for participating in the EEO process or opposing unlawful discrimination.

You can obtain assistance from your EEO Counselor in filling out this form. Your EEO Counselor can also answer any questions you may have about this form. In item 8, you should specify the basis of your complaint: race, color, religion, gender (sex), national origin, age *(date of birth)*, physical or mental disability *(specific information about your disability)*, genetic information (including family medical history), and/or reprisal for participating in the EEO process or opposing unlawful discrimination. If you list "Reprisal," please state the nature of the prior EEO activity in which you were engaged, i.e. did you file a prior EEO complaint? Use an additional sheet of paper, if necessary.

It is very important that you be precise as to the dates of all actions or events you are protesting. In addition, the claims listed in item 9, must be limited to those claims discussed with an EEO Counselor *(discussed within 45 calendar days of occurrence of the event, or within 45 calendar days of the effective date, if a personnel action)* or like or related claims. If any of the claims listed in item 9 were discussed with an EEO Counselor, but not within 45 calendar days of their occurrence or of their effective date, you must explain why you waited more than 45 calendar days. If any of the claims listed in item 9 were not discussed with an EEO Counselor, please contact the Office of Resolution Management (ORM), Regional EEO Officer IMMEDIATELY. The requirement that you contact an EEO Counselor about every claim listed in item 9 will not be waived under any circumstances. Failure to do so will only delay the processing of your complaint.

It is your responsibility to keep the (ORM) informed of your current address. If you move, immediately advise the ORM District Office where you filed this complaint of your new address. In addition, you may receive certified and express mail in connection with your complaint. It is your responsibility to claim all certified and express mail. Failure to notify ORM of a change in address or to claim certified and express mail may lead to dismissal of your complaint.

**REPRESENTATION:** You may have a representative of your own choosing at all stages of the processing of your complaint. No EEO Counselor, EEO Investigator or EEO Officer may serve as a representative. (Your representative need not be an attorney, but only an attorney representative may sign the complaint on your behalf.)

**WHEN TO FILE:** Your formal complaint must be filed within 15 calendar days of the date you received the *"Notice of Right to File a Discrimination Complaint"* (NRTF) from your EEO Counselor. If you do not meet this time limit, you must explain why you waited more than 15 calendar days to file. These time limits may be extended under certain circumstances; however, they will NOT be waived and your complaint will NOT be investigated unless you explain your untimeliness and the explanation is acceptable in accordance with EEOC, 29 C.F.R. §1614(c).

**WHERE TO FILE:** The complaint should be filed with the ORM District Office identified in the NRTF. You may submit a copy either by mail, in person, electronically (via e-mail), or by facsimile. Filing instructions are contained in the cover letter attached to the NRTF.

**PRIVACY ACT STATEMENT:** Maintenance and disclosure of VA Form 4939 is made in accordance with the Privacy Act of 1974. Collection of the information on this form is authorized and/or required by the regulations of the EEOC, 29 C.F.R. §1614. All records, from which information is retrieved, by the name or personal identifier of a respondent, are maintained by a Government-wide Systems of Records: EEOC/GOVT-1, Equal Employment Opportunity Complaint Records and Appeal Records. The information collected will be used by ORM to determine whether your complaint is acceptable for investigation and in connection with any subsequent investigation and processing of your complaint. In the course of any investigation, this form may be shown to any individual who may be required by regulations, policies or procedures of the EEOC and/or ORM to provide information in connection with this complaint, including individuals you may have identified as responsible for the acts or events at issue in this complaint. Other disclosures may be: (a) to respond to a request form from a Member of Congress regarding the status of the complaint or appeal; (b) to respond to a court subpoena and/or to refer to a district court in connection with a civil suit; (c) to disclose information to authorized officials or personnel to adjudicate a complaint or appeal; or (d) to disclose information to another Federal agency or to a court or third party in litigation when the Government is party to a suit before the court.

**RESPONDENT BURDEN STATEMENT:** In accordance with the Paperwork Reduction Act of 1995, The Department of Veterans Affairs (VA) may not conduct or sponsor, and the respondent is not required to respond to this collection of information unless it displays a valid OMB Control Number. The valid OMB Control Number for this information collection is 2900-0716. The collection of this information is voluntary. However, the information is necessary to determine if your complaint of employment discrimination is acceptable for further processing in accordance with EEOC, 29 C.F.R. §1614. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing the form. Send comments regarding this burden estimate or any other aspects of this collection, including suggestions for reducing this burden, to VA Clearance Officer (005R1B), 810 Vermont Avenue, Washington, DC 20420. SEND COMMENTS ONLY. DO NOT SEND THIS FORM, A COMPLAINT OF EMPLOYMENT DISCRIMINATION, OR REQUEST FOR BENEFITS TO THIS ADDRESS

REVERSE OF VA FORM 4939, MAR 2017

Exhibit B, page 2/5

Attachment to Formal EEO Complaint of Allison Gill

November 21, 2019

Claims:

1. The Agency violated the Rehabilitation Act when it failed to accommodate Ms. Gill and failed to properly engage in the interactive process.

   **Background**: Ms. Gill requested an accommodation of 100% telework on or about May 21, 2019. Around that time, she also requested and was approved for FMLA leave, which extended through August 2, 2019.

   **Specifics of claim**: The Agency failed to respond to the accommodation request until July 26, 2019 and then denied it for pretextual and false reasons. In an email sent to Ms. Gill's work email on July 26, 2019, the Agency denied Ms. Gill's accommodation request for 100% telework, but instead approved her for 3 days per week telework. Pamela Ballou-Moore, the Reasonable Accommodation Coordinator ("RAC") stated that the reason for the denial was:

   > Specifically, the recent reorganization of your office has created a requirement for staff to be in Washington, D.C. to carry out certain essential job functions. For example, some face-to-face interaction between you and the organization's clients is needed to build an effective relationship with the organization's clients. Additionally, your physical presence in the office is required to provide some of the training you are tasked with providing. Moreover, granting your request for 100% telework would greatly increase the workload of those employees present in the office by requiring them to take on more assignments that require presence in the office. Besides negatively impacting the organization's ability to carry out its mission, the Rehabilitation Act does not require the Agency to grant an employee a reasonable accommodation that would require removing one or more the employee's essential job functions or that would result in increasing the workload on other employees in the requestor's organization.

   The July 26 email also stated that the Agency would "close" Ms. Gill's accommodation request unless she responded by "Friday, August 5, 2019."[1] Ms. Gill was still on FMLA leave and did not receive the email until a few days later. By July 30, 2019, while still on FMLA, she requested an update on her reasonable accommodation request. On August 1, 2019, Mr. Grady responded that the requested accommodation had been denied and Ms. Gill should look at her work email for a response that was sent to her on July 26, 2019.

---

[1] August 5, 2019 was a Monday.

1

Ms. Gill then responded to the Agency on August 2, 2019, identifying the inaccuracies in the Agency's reasoning and reiterating her request for 100% telework. For example, Ms. Gill's job was not actually in Washington, DC. The Agency had directed her reassignment to Washington, DC, but informed her she was entitled to decline the reassignment because it was outside of her commuting area. She declined the reassignment request on June 24, 2019, and thus, she remained in her job, which was located in San Diego. On August 6, the RAC responded that Ms. Gill was "still in your current job position. However, as indicated, management cannot continue to allow you to remain in that position permanently while teleworking full-time for the reasons provided by management in my prior email to you. Nevertheless, while the Agency searches for a reassignment position for you, you are being allowed to continue teleworking full-time as a temporary interim accommodation." The RAC declined to specify that Ms. Gill's "current job position" was in San Diego and did not specifically respond to the issues raised by Ms. Gill in her August 2, 2019 reply.

Although the interim 100% telework was provided and extended, it was subject to overly restrictive conditions from August 12, 2019 to September 13, 2019. The 100% telework was never granted as a permanent accommodation.

   2. Ms. Gill has been subjected to a hostile work environment based on her disability and retaliation for prior protected EEO activity.

   Specifically, Mr. Grady began subjecting Ms. Gill to a hostile work environment and harassing her upon her return from FMLA leave in early August 2019. On August 6, 2019, Ms. Gill was contacted by Patrick Grady.[2] Mr. Grady informed Ms. Gill that he was conducting a "fact-finding" regarding her conduct. Mr. Grady did not provide her with either Kalkines or Garrity warnings. When Ms. Gill asked if she could have a representative during the fact-finding, Mr. Grady said she could not. He then proceeded to accuse her of abusing her FMLA leave. He showed her documents indicating that he had accessed her personal social media accounts and asked how she was able to engage in personal non-VA related activities while she was on FMLA and why she could not perform work at the Agency during that time.

   Then, on August 9, 2019, Mr. Grady indicated that the 100% telework accommodation (mentioned in Claim 1) was only in place for 90 days.

   On August 15, 2019, Mr. Grady provided Ms. Gill with a new telework agreement, dated August 12, 2019, that had overly restrictive conditions, such as that she must respond to Instant Messages within 10 minutes, answer telephone calls within 5 rings and stating that calls should not go to voice mail during normal working hours unless Ms. Gill was on another work-related call, and respond to inquiries and requests received by email within two hours of receipt. Ms. Gill's prior telework agreement had no such restrictions.

---

[2] Mr. Grady first sought, by email of July 16, 2019, to have a "discussion" with Ms. Gill, but she responded that she was on FMLA leave and it would not be appropriate for her to do so at that time.

Mr. Grady repeatedly demanded that Ms. Gill sign and agree to this overly restrictive, clearly discriminatory and retaliatory telework "agreement." On August 19, 2019, Ms. Gill responded that the new telework restrictions were discriminatory, harassing and retaliatory. She requested LWOP.

Mr. Grady responded on August 20, reiterating the alleged need for the telework restrictions and not responding to Ms. Gill's request for LWOP. Ms. Gill responded on August 20, 2019, reiterating her request for LWOP. The Agency then approved the LWOP.

On September 12, 2019, Mr. Grady asked for additional medical documentation from Ms. Gill as to why she needed LWOP. Ms. Gill provided the documentation.

On September 13, 2019, Mr. Grady instructed Ms. Gill that she would no longer be on LWOP and was "approved" for 100% telework without the prior restrictions. However, at this juncture, Ms. Gill's condition was exacerbated by the harassment and needed LWOP. Through counsel, that request was made on September 13, 2019. Although Mr. Grady had refused to respond about the LWOP and had directed that Ms. Gill return to work, the RAC then approved the LWOP on September 13, 2019, and stated she would be continuing a search for a reassignment for Ms. Gill. Ms. Gill provided updated medical information on September 19, 2019. Finally, on September 30, 2019, the RAC approved LWOP until November 23, 2019, while the RAC said she would continue to explore the possibility of job reassignment as an accommodation. Ms. Gill remains on LWOP presently and the Agency has not identified any reassignment options as of this date.

In addition, all of the incidents perpetrated by the Agency in Claim 1, above, are also part of the continuing hostile work environment in Claim 2.

**Relief Sought**: Remediation of the hostile work environment, including consideration of disciplinary action against the management officials perpetuating the hostile work environment; restoration of leave; back pay with interest and benefits, calculated pursuant to the Back Pay Act, as amended; retroactive approval of the requested reasonable accommodation; compensatory damages in the amount of $300,000, or the maximum amount permitted by law, whichever is greater; and attorney's fees and costs.