TARA K. MCGRATH
United States Attorney
BETSEY BOUTELLE
Assistant United States Attorney
California Bar No. 299754
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8764
Fax: (619) 546-7751
Email:  betsey.boutelle@usdoj.gov

Attorneys for DENIS R. MCDONOUGH and
ROBERT L. WILKIE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON M. GILL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DENIS R. MCDONOUGH, Secretary,<br>United States Department of Veterans<br>Affairs, et al.<br><br>　　　　Defendants. | Case No.:  23-cv-1892-LAB-MSB<br><br>**MOTION TO DISMISS COMPLAINT<br>BY DEFENDANTS MCDONOUGH<br>AND WILKIE [Fed. R.  Civ. P.<br>12(b)(1), 12(b)(2), & 12(b)(6)]**<br><br>Date:　　Mar. 18, 2024<br>Time:　　11:15 a.m.<br>Crtrm:　14A<br>Judge:  Hon. Larry A. Burns |

# TABLE OF CONTENTS

PAGE(S)

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................. 3

       A.     Factual History ......................................................................................... 3

       B.     Procedural History .................................................................................... 5

III.    LEGAL STANDARDS ....................................................................................... 7

       A.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction ............................. 7

       B.     Rule 12(b)(2): Lack of Personal Jurisdiction ........................................ 8

       C.     Rule 12(b)(6): Failure to State a Claim ................................................. 9

IV.    ARGUMENT ...................................................................................................... 10

       A.     Plaintiff's first, third, and fifth causes of action under the Rehabilitation Act must be dismissed because they fail to state a claim upon which relief may be granted ................................. 10

              1.     Plaintiff's first cause of action (disability discrimination) fails to state a claim because she alleges no facts suggesting that she suffered an adverse employment action because of her disability ........................... 10

              2.     Plaintiff's third cause of action (failure to engage in the interactive process) is not a standalone cause of action under the Rehabilitation Act and thus fails to state a claim ............................................................... 13

              3.     Plaintiff's fifth cause of action (hostile work environment) fails to state a claim because Plaintiff identifies no verbal or physical conduct that she was subjected to because of her disability during the relevant period, and which was sufficiently severe or pervasive to create an abusive work environment ................... 13

       B.     Defendant Wilkie must be dismissed from the lawsuit entirely. ............................................................................................... 15

              1.     The Court lacks personal jurisdiction over Defendant Wilkie, who Plaintiff sues in his individual capacity ............... 15

2.   Even if personal jurisdiction existed, all five Rehabilitation Act claims against Defendant Wilkie would be barred because the only proper defendant to those causes of action is the current head of the relevant federal agency ............................................................ 17

3.   The Court lacks subject matter jurisdiction over Plaintiff's sixth cause of action for "Retaliation for Protected Speech and Association," which also fails to state a claim for which relief may be granted .......................... 18

a.   Plaintiff's Section 1983 claim does not reach federal officials like Defendant Wilkie .......................... 18

b.   Plaintiff's constitutional claims are precluded by the Civil Service Reform Act in any event because they are based on her federal employment .................................................... 19

4.   The Court lacks subject matter jurisdiction over Plaintiff's seventh cause of action for "Conspiracy," which also fails to state a claim. ................................................ 20

V.   CONCLUSION ........................................................................................... 20

1

# TABLE OF AUTHORITIES

2

PAGE(S)

3

**CASES**

4

*A.I.I.L. v. Sessions,*
5
   No. CV-19-00481-TUC-JCH, 2022 WL 997276 (D. Ariz. Mar. 31, 2022) ................... 17

6

*Ashcroft v. Iqbal,*
7
   556 U.S. 662 (2009) .............................................................................................. 9, 12

8

*B.K.B. v. Maui Police Dep't,*
9
   276 F.3d 1091 (9th Cir. 2002) ....................................................................................... 5

10

*Barsten v. Dep't of Interior,*
11
   896 F.2d 422 (9th Cir. 1990) ...................................................................................... 17

12

*Bell Atl. Corp. v. Twombly,*
13
   550 U.S. 544 (2007) .............................................................................................. 9, 12

14

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
15
   403 U.S. 388 (1971) .................................................................................................... 19

16

*Boschetto v. Hansing,*
17
   539 F.3d 1011 (9th Cir. 2008) ...................................................................................... 8

18

*Burlington Indus., Inc. v. Ellerth,*
19
   524 U.S. 742 (1998) .................................................................................................... 10

20

*Calder v. Jones,*
21
   465 U.S. 783 (1984) .................................................................................................... 16

22

*Campbell v. Hawaii Dep't of Educ.,*
23
   892 F.3d 1005 (9th Cir. 2018) .................................................................................... 11

24

*Collins v. Spencer,*
25
   No. 17-CV-1723 JLS (KSC), 2020 WL 487419 (S.D. Cal. Jan. 30, 2020) ................... 14

26

*Dole Food Co. v. Watts,*
27
   303 F.3d 1104 (9th Cir. 2002) ...................................................................................... 9

28

*Estell v. McHugh*,
   No. 15-cv-04898-MEJ, 2016 WL 4140819 (N.D. Cal. Aug. 4, 2016) .......................... 11

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ............................................................................................... 13, 14

*Gilbert v. DaGrossa*,
   756 F.2d 1455 (9th Cir. 1985) ..................................................................................... 15

*Gipaya v. Barrett*,
   803 F. App'x 111 (9th Cir. 2020) ................................................................................. 13

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17 (1993) ....................................................................................................... 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ................................................................................ 15, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ....................................................................................................... 8

*Lacayo v. Donahoe*,
   No. 14-cv-04077-JSC, 2015 WL 993448 (N.D. Cal. March 4, 2015) ............................ 9

*Lane v. Wilkie*,
   No. 3:19-CV-1918-LAB-MSB, 2021 WL 3269661 (S.D. Cal. July 30, 2021) ........ 13, 14

*Lawler v. Montblanc N. Am., LLC*,
   704 F.3d 1235 (9th Cir. 2013) ..................................................................................... 14

*Maurice v. O'Rourke*,
   No. C18-1 TSZ, 2018 WL 2767298, n.2 (W.D. Wash. June 8, 2018) ........................... 20

*Moore v. Harker*,
   No. 19-CV-2471-AJB-WVG, 2021 WL 5750457 (S.D. Cal. Mar. 24, 2021) ............... 11

*Morse v. N. Coast Opportunities, Inc.*,
   118 F.3d 1338 (9th Cir. 1997) ..................................................................................... 19

*Munns v. Clinton*,
   822 F. Supp. 2d 1048 (E.D. Cal. 2011) ........................................................................ 17

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ........................................................................................... 6

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) ............................................................................ 9

*Perez v. United States,*
    No. 13CV1417-WQH-BGS, 2014 WL 4385473 (S.D. Cal. Sept. 3, 2014).................... 17

*Polselli v. Aki,*
    No. 19-CV-1041-WQH-NLS, 2020 WL 13822559 (S.D. Cal. Mar. 3, 2020)............... 18

*Ross v. Padres LP,*
    No. 17-cv-1676-JLS (JLB), 2018 WL 3126114 (S.D. Cal. June 25, 2018)................... 12

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ........................................................................... 8

*Sanders v. Arneson Prod., Inc.,*
    91 F.3d 1351 (9th Cir. 1996) ............................................................................ 10

*Saul v. United States,*
    928 F.2d 829 (9th Cir.1991) ............................................................................. 19

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ....................................................................... 8, 16

*Sher v. Johnson,*
    911 F.2d 1357 (9th Cir. 1990) ........................................................................... 8

*Simmons v. Modly,*
    No. 19-CV-1448 JLS (WVG), 2020 WL 4784739 (S.D. Cal. Aug. 18, 2020).............. 18

*Smith v. Brennan,*
    No. 15-cv-04516-WHO, 2016 WL 1446720 (N.D. Cal. Apr. 13, 2016) ...................... 11

*Snapp v. United Transportation Union,*
    889 F.3d 1088 (9th Cir. 2018) ........................................................................... 13

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir.) ..................................................................................... 9

*Sprewell v. Golden State Warriors*,
　275 F.3d 1187 (9th Cir. 2001).................................................................. 9

*U.S. Dep't of Energy v. Ohio*,
　503 U.S. 607 (1992) ................................................................................. 8

*United States v. Dalm*,
　494 U.S. 596 (1990) ................................................................................. 8

*United States v. Ritchie*,
　342 F.3d 903 (9th Cir. 2003) .................................................................... 9

*Vasquez v. Cty. of Los Angeles*,
　349 F.3d 634 (9th Cir. 2003) .................................................................. 13

*Walden v. Fiore*,
　571 U.S. 277 (2014) ............................................................................... 15

*Walton v. U.S. Marshals Serv.*,
　492 F.3d 998 (9th Cir. 2007) .................................................................. 10

*Wilborn v. Mayorkas*, No.,
　21-56391, 2022 WL 3700850 (9th Cir. Aug. 26, 2022)......................... 19

*Williams v. Camden USA, Inc.*,
　No. 19-cv-00691-AJB-AHG, 2020 WL 953285 (S.D. Cal. Feb. 26, 2020) ................... 12

*Ziglar v. Abbasi*,
　137 S. Ct. 1843 (2017)............................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATUTES**

5 U.S.C. § 7513(d) ........................................................................................... 19
28 U.S.C. § 2302 .............................................................................................. 19
29 U.S.C. § 791(g) ........................................................................................... 10
29 U.S.C. § 794a(a)(1) ............................................................................ 5, 10, 17
42 U.S.C. § 1983 ..................................................................................... 2, 18, 19
42 U.S.C. § 2000e-2(a)(1) ................................................................................ 10
42 U.S.C. § 2000e-16(c) .................................................................................. 17

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 1, 7
Federal Rule of Civil Procedure 12(b)(2) ...................................................... 1, 8
Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1, 9
Federal Rule of Civil Procedure 12(h)(3) .......................................................... 8

**REGULATIONS**

29 C.F.R. § 1614.105(a)(1) ................................................................................ 5
29 C.F.R. § 1614.106 ......................................................................................... 5
29 C.F.R. § 1614.110 ......................................................................................... 6
29 C.F.R. § 1614.401(a) ..................................................................................... 6

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on March 18, 2024, at 11:15 a.m., or as soon thereafter as the matter may be heard the United States District Court for the Southern District of California, Defendants Denis R. McDonough, Secretary of the Department of Veterans Affairs, and Robert L. Wilkie, an individual, will and hereby do move for an order dismissing Plaintiff's complaint against them, in whole or in part, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant Wilkie also moves to dismiss the claims against him for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

At core, this is a federal employment discrimination lawsuit governed by the Rehabilitation Act. Plaintiff Allison Gill, a former Health Systems Specialist at the Department of Veterans Affairs, claims that the VA failed to accommodate her disabilities (post-traumatic stress disorder, panic disorder, and major depressive disorder), failed to engage in the interactive process as to potential accommodations, and subjected her to disparate treatment and harassment on the basis of her disability. She also claims that the VA retaliated against her for protected conduct (i.e., complaining about disability discrimination). Plaintiff has properly named VA Secretary Denis R. McDonough in his official capacity as the defendant to those Rehab Act claims. Nevertheless, three of Plaintiff's five Rehab Act claims against the VA must be dismissed because (1) Plaintiff fails to allege facts showing that she experienced adverse employment actions motivated by discriminatory animus, (2) Plaintiff's claim for "failure to engage in the interactive process" is not cognizable as a standalone cause of action, and (3) Plaintiff does not allege

---

[1] The United States Attorney's Office for the Southern District of California does not currently represent Defendant Donald J. Trump in this case. This motion is filed on behalf of Defendants McDonough and Wilkie only.

1    unwelcome verbal or physical conduct that was severe and pervasive enough to create a

2    hostile work environment. Plaintiff's first, third, and fifth causes of action under the Rehab

3    Act thus fail to state a claim for which relief may be granted and should be dismissed in

4    their entirety.

5         But Plaintiff's lawsuit is not limited to the disability discrimination claims that she

6    raised and exhausted via the administrative equal employment opportunity ("EEO")

7    process. Rather, she presents this Court with a separate theory: that the various unwelcome

8    personnel actions of which she complains also resulted from a high-level government

9    conspiracy that personally targeted Plaintiff due to her "anti-Trump" political activity

10   outside of work. Plaintiff alleges that this conspiracy against her "goes all the way" to

11   former President Donald Trump and former VA Secretary Robert Wilkie. ECF No. 1 at 6.

12   In service of that theory, Plaintiff attempts to expand the reach of her federal employment

13   claims by naming former President Trump and former Secretary Wilkie as defendants to

14   this lawsuit in their personal capacities.

15        But Plaintiff's personal-capacity claims against Defendant Wilkie are subject to

16   dismissal for multiple distinct reasons. First, the Court lacks personal jurisdiction over

17   Defendant Wilkie, a non-resident defendant, and he should be dismissed from this lawsuit

18   for that reason alone. Second, even if jurisdiction existed, the Rehab Act does not permit

19   personal-capacity suits against individual defendants, so Plaintiff's five Rehab Act claims

20   against Defendant Wilkie must be dismissed for lack of subject matter jurisdiction. Third,

21   Plaintiff's purported constitutional claims against Defendant Wilkie must be dismissed

22   because 42 U.S.C. § 1983 does not apply to federal officials, and because those claims are

23   precluded in any event by the Civil Service Reform Act, which provides the exclusive

24   remedy for federal employees who claim that an adverse employment action violated their

25   constitutional rights. Fourth, Plaintiff's cause of action for "Conspiracy" is barred because

26   it is derivative of Plaintiff's other nonviable claims against Defendant Wilkie.

27        Defendant thus respectfully requests that the Court (1) dismiss Plaintiff's first, third,

28   and fifth causes of action under the Rehab Act; and (2) dismiss Defendant Wilkie from the

lawsuit in its entirety.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Factual History

According to the complaint, Plaintiff began her employment with the VA in February 2009, eventually obtaining a GS-14 level position as a Health Systems Specialist at the West Region TRICARE office in San Diego. ECF No.1 at 1, 4. In that role, Plaintiff states, she worked for "the Office of Interagency Health Affairs in DC" as a "VA West Region TRICARE Liaison to the Department of Defense." ECF No. 1 at 4. In April 2019, the VA notified Plaintiff that this position would be reassigned to Washington, D.C. *Id.* As the Final Agency Decision on Plaintiff's administrative complaint explains, Plaintiff's "office was reorganized, and all personnel with her job title were reassigned to work in the Washington, D.C. main office rather than in various TRICARE field offices." Ex. 3 at VA_MTD_014.[2] Plaintiff alleges that she "informed her supervisors that she would decline a move to Washington, D.C., due to her husband and mother's health issues." ECF No. 1 at 4.

Plaintiff alleges that she suffers from post-traumatic stress disorder, panic disorder, and major depressive disorder. ECF NO. 1 at 12. In April 2019, Plaintiff informed the Agency that the announcement of the management-directed reassignment had triggered her PTSD. Ex. 3 at VA_MTD_003. Plaintiff also alleges that "[t]he office environment was triggering and exacerbating her condition" and that she "was experiencing panic attacks in the workplace." ECF No. 1 at 12. Roughly one month after Plaintiff received notice of the reassignment (but several months before it was scheduled to take place), Plaintiff sought and was ultimately approved for a three-month leave of absence from her position under the Family and Medical Leave Act, from roughly May 9, 2019, through August 5, 2019. ECF No. 1-2 at 6.

On or around May 21, 2019, while still out on leave, Plaintiff submitted an

---

[2] Defendants McDonough and Wilkie have filed a Request for Judicial Notice as to the VA's Final Agency Decision on Plaintiff's administrative EEO complaint.

accommodation request for "100% telework" pertaining to her position. ECF No. 1 at 5. Meanwhile, on June 12, 2019, Plaintiff alleges the Agency issued its formal notice to reassign Plaintiff's position to Washington, D.C., effective August 4, 2019. ECF No. 1 at 5. On June 24, 2019, Plaintiff refused the reassignment. *Id.* In July 2019, the Agency notified Plaintiff that it was refusing her request for 100% telework; instead, it counter-offered Plaintiff three days per week of telework. *Id.*

Plaintiff returned from FMLA leave on or around August 6, 2019. *Id.* at 5–6. At that time, the Agency granted her 100% telework as an "interim" accommodation for 90 days while it explored the possibility of accommodating Plaintiff with a reassignment to a new position within the VA that would meet Plaintiff's geographic and medical restrictions. *Id.* at 5–6. Plaintiff states that on that same day, she "learned that the Director"—i.e., her immediate supervisor—"had accessed her social media accounts and obtained her videos and pictures." ECF No. 1 at 5. While Plaintiff's complaint is vague surrounding this accusation, the EEOC Appeal Decision she has attached and incorporated to her pleading provides additional context: in June 2019, while Plaintiff was on FMLA leave related to her PTSD, Plaintiff's supervisor, Patrick Grady, received a report from another employee about a website involving a podcast Plaintiff hosted. ECF No. 1-2 at 8. When Grady viewed the website and associated public social media sites, he found information and images revealing Plaintiff's recent media activities—including out-of-state travel and public appearances onstage—that appeared to conflict with Plaintiff's representations in her FMLA paperwork that she could not "have face-to-face interactions or hold conversations." *Id.* Grady consulted HR and was advised to conduct a "fact-finding session" about this apparent discrepancy to ensure that Plaintiff was not abusing FMLA leave. *Id.* Grady duly communicated with Plaintiff about the issue when she returned from medical leave, and Plaintiff argued there was no conflict: her media appearances and travel "did not exacerbate her PTSD" because they were not "linked to her trauma." *Id.* Grady accepted this explanation and did not pursue the matter further. *Id.* Plaintiff does not allege she was ever formally disciplined for any misuse of FMLA leave.

Plaintiff alleges that some days later, on August 15, 2019, when Plaintiff had been teleworking full-time for a little over a week, Grady presented Plaintiff with a telework agreement containing "overly restrictive conditions, such as returning instant messages within ten minutes and answering telephone calls within five rings." ECF No. 1 at 6. She claims that "[s]uch restrictive telework agreement was not given to any other counterparts until after Plaintiff complained of its retaliatory nature." *Id.* But she does not explain why the agreement's conditions were "overly restrictive" for a client-facing position, and she acknowledges it was issued to other employees. The following Monday, August 19, 2019, Plaintiff notified Grady that she would not sign the telework agreement; instead, she requested Leave Without Pay starting the following day. ECF No. 1-2 at 6. Plaintiff states in her complaint that "management delayed Plaintiff's request for Leave Without Pay," ECF No. 1 at 6, but in the "Attachment to Formal EEO Complaint of Allison Gill"—which Plaintiff has appended to her judicial complaint—she admits that her request for Leave Without Pay was granted the next day, and she began her leave on the date she had requested. ECF No. 1-2 at 17.

On November 27, 2019, Plaintiff's accommodation request for a new position was closed, and she was not reassigned. ECF No. 1 at 1. Meanwhile, according to the EEOC Appeal Decision Plaintiff attached to her complaint, she remained on Leave Without Pay until at least January 21, 2020, and appears to have remained on Leave Without Pay until her removal from service on March 25, 2020. ECF No. 1-2 at 6.

### B.   Procedural History

Before bringing a Rehabilitation Act claim in court, a federal employee must first exhaust his or her administrative remedies, starting by initiating contact with an EEO counselor at the employing agency within 45 days of the date of the alleged discrimination or adverse action. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); 29 U.S.C. § 794a(a)(1); 29 C.F.R. § 1614.105(a)(1). To pursue the claim further, a plaintiff must then file an administrative Complaint of Employment Discrimination (also known as an "EEO Complaint") with the agency's EEO office, which is required to conduct an

investigation. 29 CFR § 1614.106.  The agency is then expected to issue a Final Agency Decision ("FAD"), which a complainant may administratively appeal to the EEOC. 29 CFR § 1614.110; 29 CFR § 1614.401(a). Within 90 days of the EEOC's final decision on appeal, the complainant may file a civil action in federal district court. Any federal employment discrimination claims that are not timely exhausted via the administrative process are barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

Here, Plaintiff initiated contact with an EEO counselor on August 6, 2019, following her "fact-finding" meeting that day with her supervisor. Ex. 1 (Counselor Report). Plaintiff alleged this "fact-finding" was "discriminatory." *Id.* at VA_MTD_003. On November 21, 2019, Plaintiff filed a formal administrative EEO Complaint with the Agency. ECF No. 1-2 at 13. In her EEO Complaint, Plaintiff grouped her claims into two categories: (1) "The Agency violated the Rehabilitation Act when it failed to accommodate [Plaintiff] and failed to properly engage in the interactive process," and (2) Plaintiff was "subjected to a hostile work environment based on her disability and retaliation for prior protected activity." *Id.* at 15, 16. The VA accepted these claims for investigation and ultimately confirmed that the total claims accepted were the following:

> 1. on July 26, 2019, the Agency denied Complainant's reasonable accommodation request submitted on May 21, 2019, for 100% telework, and it granted three days of telework instead;
>
> 2. on August 6, 2019, the Director told Complainant that he was conducting a factfinding inquiry; denied her request for representation; and accused her of Family and Medical Leave Act (FMLA) abuse;
>
> 3. on August 6, 2019, Complainant learned that the Director accessed her social media accounts and obtained her videos and pictures;
>
> 4. on August 9, 2019, the Director granted Complainant 100% telework, temporarily for 90 days as an interim accommodation;
>
> 5. on August 15, 2019, the Director presented Complainant with another telework agreement with restrictive conditions, such as returning instant messages within ten minutes and answering telephone calls within five rings;

6. on August 19, 2019, management delayed Complainant's request for leave without pay (LWOP); and

7. on November 27, 2019, Complainant's accommodation request was closed, and she was not reassigned.

ECF No. 1 at 5–6. The Agency ultimately characterized Claims 1, 4, 5, and 7 as alleging failure to reasonably accommodate Plaintiff's disability under the Rehab Act. ECF No. 1-2 at 5. The VA characterized Claims 2, 3, and 6 as alleging disparate treatment based on disability under the same statute. *Id.* at 1-2 at 7. Following an investigation, the VA issued a FAD dismissing Plaintiff's claims. ECF No. 1 at 6; Ex. 3. The EEOC issued its final order affirming the FAD on July 17, 2023. ECF No. 1, 1-2.

Plaintiff initiated this lawsuit on October 16, 2023. In contrast to Plaintiff's administrative EEO Complaint—which was premised on the theory that Plaintiff's immediate supervisor and various non-political VA employees had harassed her because of her disability and failed to accommodate her—Plaintiff's civil complaint argues that she was actually targeted by high-level federal officials and the President of the United States for her outside-of-work political activity. Specifically, Plaintiff alleges that she "provoked the ire of President Donald J. Trump and his Secretary of the Veterans Administration, Robert L. Wilkie, by daring to create, host, and produce the anti-Trump and wildly successful, Webby-award winning Mueller, She Wrote podcast and run a very popular Mueller, She Wrote Twitter account under a pseudonym, A.G." ECF No. 1 at 1. Plaintiff further alleges (relying on the passive voice) that "[a]fter a 'witch hunt' to find out who this A.G. was, the chain of command was instructed to harass Dr. Gill and force her out of the job she had held across multiple administrations, making untenable, pretextual demands regarding her job requirements in violation of the First Amendment of the United States Constitution, Rehabilitation Act, and Title VII of the Civil Rights Act of 1964." *Id.* These allegations appear to be based on little more than Plaintiff's speculation.

## III.  **LEGAL STANDARDS**

### A.  **Rule 12(b)(1): Lack of Subject Matter Jurisdiction**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the

Court's subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, this Court must presume that "a cause lies outside this limited jurisdiction" unless a party establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A plaintiff bears the burden of proving that jurisdiction exists. *Id.* If a plaintiff fails to carry this burden, or if a court determines at any time that jurisdiction is lacking, the court must dismiss the case. Fed. R. Civ. P. 12(h)(3). With respect to claims against the United States, "[u]nder settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Dalm*, 494 U.S. 596, 608 (1990) (internal quotations omitted). Waivers of sovereign immunity must be "construed strictly in favor of the sovereign." *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the allegations in the complaint as insufficient on their face to invoke federal jurisdiction. *Id.* A factual attack, in contrast, disputes the allegations which alone would otherwise invoke federal jurisdiction. *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Further, the Court "need not presume the truthfulness of the plaintiff's allegations." *Id.* If the Court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

## B.   <u>Rule 12(b)(2): Lack of Personal Jurisdiction</u>

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may be dismissed if the court lacks personal jurisdiction over the defendant. The party filing the complaint bears the burden to establish jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff must establish jurisdiction over each defendant individually. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Where a motion to dismiss based on

personal jurisdiction is based on written materials rather than an evidentiary hearing, a plaintiff must make a prima facie showing of jurisdictional facts to satisfy this burden. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

### C.    Rule 12(b)(6): Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

While allegations of material fact are construed in the light most favorable to the non-moving party, the court need not accept as true "allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Moreover, where there is an "obvious alternative explanation" for allegedly discriminatory events outlined in a plaintiff's complaint, a court may conclude that "discrimination is not a plausible conclusion" and dismiss the claim. *Iqbal*, 556 U.S. at 682, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

When deciding a motion to dismiss under Rule 12(b)(6), the court may consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahoe*,

No. 14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. March 4, 2015) (collecting cases).

## IV.  ARGUMENT

### A.  Plaintiff's first, third, and fifth causes of action under the Rehabilitation Act must be dismissed because they fail to state a claim upon which relief may be granted.

#### 1.  Plaintiff's first cause of action (disability discrimination) fails to state a claim because she alleges no facts suggesting that she suffered an adverse employment action because of her disability.

Plaintiff styles her first claim for relief as "Disability Discrimination." ECF No. 1 at 1, 10. Specifically, Plaintiff's first cause of action appears to consist of a claim for disparate treatment. *Id.* at 10.

To state a prima facie case of disparate treatment based on disability, a plaintiff must show that she is (1) "a qualified individual with a disability" (2) "who suffered an adverse employment action" (3) "because of [her] disability." *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996);[3] *see also Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). For claims of disparate treatment, an "adverse employment action" is one that materially affects the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 794a(a)(1). "Hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits" are adverse employment actions. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). While a plaintiff is not required to establish a full prima facie case at the pleadings stage, she must at least plead a qualifying adverse employment action and specific facts plausibly linking it to a disability.

Plaintiff fails to meet this burden here on both fronts. First, it is not entirely clear from the complaint which adverse employment actions form the basis of Plaintiff's disparate treatment claim. ECF No. 1 at 10–11. Based on the claims accepted for investigation during the administrative EEO process, however, Plaintiff apparently alleges

---

[3] The standards used to determine if an employment practice violates the Rehabilitation Act are the same standards that courts apply under Americans with Disabilities Act of 1990. 29 U.S.C. § 791(g).

that she was subject to disparate treatment based on her condition of PTSD when (a) Grady held a "fact-finding" meeting with Plaintiff to determine whether she had abused FMLA leave, (b) Grady viewed her publicly available "social media accounts and obtained her videos and pictures" as part of that inquiry, and (c) Grady "delayed" her request for Leave Without Pay by an unspecified amount of time—apparently less than one day. ECF No. 1-2 at 17.[4] None of these events were significant enough to "materially affect[] the compensation, terms, conditions, or privileges" of Plaintiff's employment for purposes of a disparate treatment claim. *See Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Cir. 2018) (stating that "[t]he mere fact that the [employer] received and investigated allegations of misconduct against [plaintiff]—with no resulting change to the conditions of her employment—is not an adverse employment action for purposes of her disparate treatment claim"). Plaintiff thus fails to allege a qualifying adverse employment action that could support a disparate treatment claim.

Second, even had Plaintiff identified a qualifying adverse employment action, she would still fall short on the causation prong. Courts regularly hold that a plaintiff fails to state a disparate treatment claim where the complaint lacks "facts plausibly establishing . . . that any employment decision was motivated by one or more of [the plaintiff's] impairments." *Smith v. Brennan*, No. 15-cv-04516-WHO, 2016 WL 1446720, at *4 (N.D. Cal. Apr. 13, 2016). *See also*, *e.g.*, *Moore v. Harker*, No. 19-CV-2471-AJB-WVG, 2021 WL 5750457, at *3 (S.D. Cal. Mar. 24, 2021) (granting motion to dismiss where "[n]othing in the FAC shows [plaintiff's supervisor] treated [plaintiff] differently than those without disabilities" and where "[n]o facts support an inference that the [plaintiff's supervisor] harbored any hostility towards [plaintiff] based on his disabilities"); *Estell v. McHugh*, No. 15-cv-04898-MEJ, 2016 WL 4140819, at *6 (N.D. Cal. Aug. 4, 2016) (finding the allegations that "defendant took numerous adverse employment actions against

---

[4] The other four events Plaintiff exhausted appear to be offered to support a failure to accommodate claim (Plaintiff's second cause of action) rather than a disparate treatment theory.

plaintiff because of her disability' and that defendant discriminated against plaintiff because of her disability" to be conclusory); *Ross v. Padres LP*, No. 17-cv-1676-JLS (JLB), 2018 WL 3126114, at *8 (S.D. Cal. June 25, 2018) (dismissal appropriate where "plaintiff [did] not offer sufficient facts to connect his termination with the discriminatory actions prohibited by the ADA").

Plaintiff's claim here suffers from the same flaws. She presents no facts plausibly linking any adverse employment action to her stated medical conditions, nor any evidence showing that Grady harbored any animus toward Plaintiff based on a disability—whether PTSD or anything else. Nor does Plaintiff identify any similarly situated non-disabled employees who were treated differently under comparable circumstances.[5] And she offers no facts that counter the "obvious alternative explanation" for the "fact-finding" she alleges was discriminatory—that she had participated in various public events and performances that seemingly contradicted her professed need to be away from work on medical leave. *Iqbal*, 556 U.S. at 682, citing *Twombly*, 550 U.S. at 567.

These supposed adverse employment actions are thus insufficient to create a plausible inference of disparate treatment based on disability. *See Williams v. Camden USA, Inc.*, No. 19-cv-00691-AJB-AHG, 2020 WL 953285, at *7 (S.D. Cal. Feb. 26, 2020) ("These three instances alone, coupled with Plaintiffs' failure to allege they were treated differently than others similarly situated, do not support an inference of discrimination disparate treatment theory above the speculative level as required by Rule 8."). Amendment would be futile, since Plaintiff has not exhausted any other discrete adverse employment actions that could form the basis of a disparate treatment claim. Plaintiff's first cause of action should thus be dismissed without leave to amend.

---

[5] Indeed, the bulk of Plaintiff's allegations in the complaint would appear to point to political animosity (not disability-related animus) being the alleged motive for the personnel actions Plaintiff contends were unjustified. Those allegations do not aid Plaintiff in stating a claim of disparate treatment based on disability.

1

2

       **2.**       **Plaintiff's third cause of action (failure to engage in the interactive process) is not a standalone cause of action under the Rehabilitation Act and thus fails to state a claim.**

3          Plaintiff's claim for failure to engage in the interactive process must be dismissed

4 because it is not an independent claim for relief. *See Snapp v. United Transportation Union*,

5 889 F.3d 1088, 1095 (9th Cir. 2018) ("[T]here exists no stand-alone claim [under the ADA]

6 for failing to engage in the interactive process. Rather, discrimination results from denying

7 an available and reasonable accommodation."). *See also Lane v. Wilkie*,

8 No. 3:19-CV-1918-LAB-MSB, 2021 WL 3269661, at *2 (S.D. Cal. July 30, 2021)

9 (granting partial summary judgment for VA because "failure to engage in the interactive

10 process isn't a claim upon which relief can be granted").

11          Plaintiff's third cause of action should be dismissed without leave to amend.

12

13

14

       **3.**       **Plaintiff's fifth cause of action (hostile work environment) fails to state a claim because Plaintiff identifies no verbal or physical conduct that she was subjected to because of her disability during the relevant period, and which was sufficiently severe or pervasive to create an abusive work environment.**

15          In her fifth cause of action for hostile work environment, Plaintiff claims that she was

16 "harassed because of her disability and her requests for accommodation." ECF No. 1 at 15.

17 To prevail on a hostile work environment claim based on disability or prior EEO activity,

18 Plaintiff must show (1) that she was subjected to verbal or physical conduct related to the

19 relevant characteristic, (2) that the conduct was unwelcome, and (3) that the conduct was

20 sufficiently severe or pervasive to alter the conditions of her employment and create an

21 abusive work environment. *Gipaya v. Barrett*, 803 F. App'x 111, 113 (9th Cir. 2020)

22 (hostile work environment claim is cognizable under Rehab Act) (citing *Vasquez v. Cty. of

23 Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (providing

24 elements of Title VII hostile work environment claim)). Hostile attitudes or general

25 incivility are not enough. The "verbal or physical conduct" that would support such a claim

26 must make the workplace environment "objectively and subjectively offensive." *Faragher

27 v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (emphasis added), citing *Harris v. Forklift

28 Systems, Inc.*, 510 U.S. 17, 21–22 (1993).

Importantly, this means that hostile work environment claims are different from disparate impact or failure to accommodate claims. "Unlike discrimination claims, harassment consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. For example, commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, and performance evaluations, . . . do not come within the meaning of harassment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (internal citations and quotations omitted); *see also Collins v. Spencer*, No. 17-CV-1723 JLS (KSC), 2020 WL 487419, at *5 (S.D. Cal. Jan. 30, 2020).

In other words, the routine personnel actions that Plaintiff exhausted via the administrative EEO process—e.g., denying a request for permanent full-time telework, conducting a due-diligence investigation into a report of potential FMLA abuse—are not conduct that can support a harassment claim in civil court. Rather, "only verbal or physical conduct will do." *Lane*, 2021 WL 3269661, at *3.

Plaintiff's complaint is largely void of such allegations. It contains only one reference to any offensive verbal comments made to Plaintiff by anyone—specifically, unnamed "members of her chain of command" who she claims "made jokes about her PTSD during meetings." ECF No. 1 at 15. While concerning, this claim appears nowhere in Plaintiff's EEO Complaint or the subsequent EEOC Appeal Decision Plaintiff attaches to her pleadings. Plaintiff provides no facts about when it occurred or evidence that she timely exhausted it. Without more, these vaguely alleged "jokes" are not sufficient on their own to alter the conditions of Plaintiff's employment and create an abusive work environment. *See Faragher*, 524 U.S. at 788 (conduct must be "extreme" before it can "amount to a change in the terms and conditions of employment," and the "sporadic use of abusive language, gender-related jokes," "occasional teasing," or "offhand comments" will not suffice).

Plaintiff's complaint thus lacks sufficient factual matter to state a claim for a hostile work environment based on a protected characteristic. Any amendment to that claim would

be futile, since there is no evidence that Plaintiff can allege any timely-exhausted verbal or physical conduct that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. Plaintiff's fifth cause of action should be dismissed without leave to amend.

**B.    Defendant Wilkie must be dismissed from the lawsuit entirely.**

**1.    The Court lacks personal jurisdiction over Defendant Wilkie, who Plaintiff sues in his individual capacity.**

To bring a damages action against a former federal employee in his individual capacity, the plaintiff must show that the forum court has personal jurisdiction over the defendant. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1459 (9th Cir. 1985). Here, Plaintiff's complaint is silent on the question of personal jurisdiction over Defendant Wilkie—the "Jurisdiction" section contains no reference to him. ECF No. 1 at 3. Nor does Plaintiff provide any facts suggesting that Defendant Wilkie has ever lived or worked in the Southern District of California or elsewhere in the state. *Id.* at 2. On the contrary, Plaintiff filed a proof of service stating that Defendant Wilkie was served in Arlington, Virginia. ECF No. 4. Plaintiff is suing him for acts he allegedly committed while he was head of the Department of Veterans Affairs, whose headquarters are in Washington., D.C.[6]

"Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim*." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). As the Supreme Court has instructed, for purposes of specific jurisdiction "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*,

---

[6] VA.gov, "Locations," available at https://www.va.gov/directory/guide/hq.asp (last visited Jan. 29, 2024).

571 U.S. 277, 290 (2014) (reversing Ninth Circuit's finding of personal jurisdiction based on where plaintiff felt effects of defendant's conduct). Thus, federal district courts in California analyze a claim of specific jurisdiction according to a three-prong test: (1) the non-resident defendant must purposefully direct his activities at the forum state or purposefully avail himself of the benefits and protections of the laws of the forum state, (2) the claim must be one which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of personal jurisdiction must be reasonable. *Yahoo!*, 433 F.3d 1199 at 1205–06 (citing *Schwarzenegger*, 374 F.3d at 802).[7] "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.

Plaintiff fails to meet this burden here. She claims solely "on information and belief" that a "coordinated effort to find the host of [her] podcast, A.G., goes all the way to Defendants TRUMP and WILKIE" and that "what happened was part of a larger conspiracy." ECF No. 1 at 6. But she does not identify any specific intentional acts that this "coordinated effort" supposedly involved or describe anything that Defendant Wilkie purportedly did to advance this effort. Instead, she merely opines that "Defendant WILKIE was aware of Plaintiff's Twitter account and podcast." ECF No. 1 at 8. But the only fact Plaintiff offers in support of that opinion is a screenshot titled "VA Secretary's Stand-up Brief 30 October 2019," which contains a list of Tweets from nearly a dozen Twitter accounts—including Plaintiff's pseudonymous "@MuellerSheWrote" handle—reacting to "Republicans walking out of a hearing pertaining to Women Veterans." *Id.* Nothing in this document is indicative of Defendant Wilkie directing any of his activities or conduct to California, much less for the purpose of retaliating against "anti-Trump" VA employees. Later, Plaintiff states in conclusory fashion that Defendant Wilkie violated her constitutional rights by means of "customs, policies, directives, practices, acts and

___

[7] Purposeful direction, in turn, requires the defendant to allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 802 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

omissions [that] included, but were not limited to, the maintenance of employment practices that allow for retaliatory actions for and prior restraint of protected speech and the maintenance of employment practices that encourage retaliation against and prior restraint of an employee for protected speech." *Id.* at 16. But "[n]ational policy implementation, oversight, and regulatory work do not constitute such personal and express aim at a forum state and are therefore insufficient to support a finding of personal jurisdiction." *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 997276, at *6 (D. Ariz. Mar. 31, 2022) (collecting cases). As another court in this district has noted, a contrary finding "would essentially subject the [high-ranking federal officials] to personal liability in every state in the Union regardless of how tenuous their actual contacts with a particular forum might be." *Perez v. United States*, No. 13CV1417-WQH-BGS, 2014 WL 4385473, at *8 (S.D. Cal. Sept. 3, 2014) (quoting *Munns v. Clinton*, 822 F. Supp. 2d 1048, 1078 (E.D. Cal. 2011)).

So too here. Plaintiff fails to make a showing that Defendant Wilkie, as Secretary of the VA, purposefully directed his activities at California, purposely availed himself of the benefits or protections of California's laws, or conducted any specific California-related activities from which Plaintiff's claims arose. There is no basis for a finding of personal jurisdiction here. Plaintiff's claims against Defendant Wilkie should be dismissed.

### 2. Even if personal jurisdiction existed, all five Rehabilitation Act claims against Defendant Wilkie would be barred because the only proper defendant to those causes of action is the current head of the relevant federal agency.

The Rehabilitation Act, 29 U.S.C. § 794a(a)(1), makes the rights, remedies and procedures of Title VII of the Civil Rights Act of 1964 applicable to claims of disability discrimination asserted by federal employees. Title VII, in turn, provides that the only proper defendant to a federal employee's discrimination claim is the head of the relevant federal agency—not the agency itself, former agency heads, nor any other individual. *See* 42 U.S.C. § 2000e-16(c). The Ninth Circuit has repeatedly affirmed that this principle applies to Rehab Act claims as well. *See Barsten v. Dep't of Interior*, 896 F.2d 422,

423 (9th Cir. 1990) (stating that a Rehab Act plaintiff "should have named the Secretary of the Interior, not the Department of the Interior, as the defendant in his complaint"). *See also Polselli v. Aki*, No. 19-CV-1041-WQH-NLS, 2020 WL 13822559, at *11 (S.D. Cal. Mar. 3, 2020) (dismissing multiple Rehab Act and Title VII claims against all defendants except current agency head); *Simmons v. Modly*, No. 19-CV-1448 JLS (WVG), 2020 WL 4784739, at *9 (S.D. Cal. Aug. 18, 2020) (same).

Here, Plaintiff has named Defendant Wilkie as a defendant to her first five causes of action, which arise under the Rehab Act. But at the time of the complaint's filing, the head of the VA was—and continues to be—Denis R. McDonough. Secretary McDonough is the only proper defendant to Plaintiff's Rehab Act claims (in his official capacity), which cannot lie against any other entity or individual. Even if personal jurisdiction over Defendant Wilkie existed—which it does not—the first five Rehab Act causes of action against him should be subject to dismissal.

### 3. The Court lacks subject matter jurisdiction over Plaintiff's sixth cause of action for "Retaliation for Protected Speech and Association," which also fails to state a claim for which relief may be granted.

Plaintiff styles her sixth cause of action against Defendant Wilkie as "Retaliation for Protected Speech and Association under U.S. Const., Amend. I, 42 U.S.C. § 1983." ECF No. 1 at 16. But neither 42 U.S.C. § 1983 ("Section 1983") nor the First Amendment permits a personal-capacity claim against Defendant Wilkie here.[8]

#### a) Plaintiff's Section 1983 claim does not reach federal officials like Defendant Wilkie.

Plaintiff suggests that her claim against Defendant Wilkie for unconstitutional retaliation for protected speech arises under 42 U.S.C. § 1983. ECF No. 1 at 16. But Section 1983 creates a cause of action for violations of the Constitution committed by *state*

---

[8] Plaintiff is not pursuing her sixth and seventh causes of action against Secretary McDonough. She alleges those claims only against Defendants Wilkie and Trump (as well as 50 Doe defendants) in their personal capacities.

actors, not by the United States or federal officials.  *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (finding Section 1983 claim "invalid on its face" as alleged against federal government actors). No such claim can lie against former Secretary Wilkie or any other federal official connected to Plaintiff's employment with the VA.

### b) Plaintiff's constitutional claims are precluded by the Civil Service Reform Act in any event because they are based on her federal employment.

Nor does Plaintiff have a cause of action against Defendant Wilkie arising under the First Amendment of the U.S. Constitution itself. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized that the Constitution permits a private cause of action for damages against federal officials who have violated a person's constitutional rights. 403 U.S. at 389. But a *Bivens* remedy is not available "if there is an alternative remedial structure present in a certain case," which "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017).

Here, an alternative remedy was available to Plaintiff through the Civil Service Reform Act ("CSRA"), which limits federal employees challenging their supervisors' "prohibited personnel practices" to an administrative remedial system. *See* 28 U.S.C. § 2302; 5 U.S.C. §§ 7513(d), 7701(a). Specifically, Congress created the CSRA as a "comprehensive system for reviewing personnel action taken against federal employees," and it is the exclusive vehicle for federal employees who claim that an adverse employment action violated their constitutional rights. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). That statutory scheme precludes Plaintiff from "seeking injunctive relief for [her] asserted constitutional injury just as it precludes [her] from bringing a *Bivens* action for damages." *Wilborn v. Mayorkas*, No. 21-56391, 2022 WL 3700850, at *1 (9th Cir. Aug. 26, 2022) (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

The CSRA thus bars Plaintiff from asserting a civil claim against Defendant Wilkie for unconstitutional retaliation for protected speech and association arising from her former

federal employment. The sixth cause of action against Defendant Wilkie should be dismissed.

### 4. The Court lacks subject matter jurisdiction over Plaintiff's seventh cause of action for "Conspiracy," which also fails to state a claim.

Plaintiff styles her seventh cause of action as "Conspiracy," and she alleges this claim against Defendants Trump and Wilkie in their personal capacities. It is unclear under what authority or source of law Plaintiff purports to assert this claim. However, it appears to be entirely derivative of Plaintiff's sixth cause of action for retaliation for protected speech. Specifically, in the relevant section of her complaint, Plaintiff alleges in conclusory fashion that "there was a conspiracy to commit retaliation for protected speech and protected activities" and that Defendant Wilkie "planned to retaliate for protected speech." ECF No. 1 at 18. As previously explained, Plaintiff's claims that Defendant Wilkie acted against Plaintiff's VA employment in retaliation for her protected speech are precluded by the CSRA as a matter of law. A derivative "Conspiracy" claim based on the same subject matter is thus barred as well. *See, e.g., Maurice v. O'Rourke*, No. C18-1 TSZ, 2018 WL 2767298, at *2, n.2 (W.D. Wash. June 8, 2018) (explaining that "the exclusive way for plaintiff to raise any non-precluded free expression or due process claim is through the administrative process established under the CSRA") (collecting cases).

## V. **CONCLUSION**

For the foregoing reasons, Defendants McDonough and Wilkie respectfully request that the Court (1) dismiss Plaintiff's first, third, and fifth causes of action under the Rehab Act; and (2) dismiss Defendant Wilkie from the lawsuit entirely.

DATED: February 9, 2024

Respectfully submitted,

TARA K. MCGRATH
United States Attorney

*s/ Betsey Boutelle*
BETSEY BOUTELLE
Assistant United States Attorney
Attorneys for the United States