ETHAN BEARMAN
California Bar No. 327490
The Bearman Firm, Inc.
9460 Wilshire Blvd, Suite 830
Beverly Hills, California 90212
Telephone: (747) 232-7626
Ethan@thebearmanfirm.com

Attorney for Plaintiff
Allison M. Gill

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON M. GILL, an individual<br><br>Plaintiff,<br><br>v.<br><br>DENIS R. MCDONOUGH, Secretary, United States Department of Veterans Affairs; DOES 1 through 50, Inclusive.<br><br>Defendants. | **CASE NO:** 23-cv-1892-JES-MSB<br><br>**MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 2, 2025<br>Time: 10:00 a.m.<br>Courtroom: 4B<br>Judge: Hon. James E. Simmons, Jr.<br>Action Filed: October 17, 2023 |

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT        (23cv1892)

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................... 1

II.  BACKGROUND ...................................................................................... 1

  A.  DR. GILL'S FEDERAL EMPLOYMENT AND SERVICE RECORD ................................. 1

  B.  DR. GILL'S DISABILITY STATUS ............................................................. 2

  C.  DIRECTED REASSIGNMENT AND ACCOMMODATION PROCESS ............................ 2

  D.  INVESTIGATION AND SUBSEQUENT ACTIONS .............................................. 4

  E.  EEOC ADMINISTRATIVE APPEAL EXHAUSTED ............................................. 5

III. LEGAL STANDARD ................................................................................ 6

IV.  ARGUMENT .......................................................................................... 6

  A.  SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S DISABILITY
DISCRIMINATION CLAIM ............................................................................... 6

    1.  Dr. Gill Has a Qualifying Disability ................................................... 7

    2.  Dr. Gill Was Qualified for Her Position ............................................. 8

    3.  Dr. Gill Suffered Discrimination Because of Her Disability ..................... 9

  B.  SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S
FAILURE TO ACCOMMODATE CLAIM ............................................................... 10

    1.  Dr. Gill Requested a Reasonable Accommodation ............................... 11

    2.  The Requested Accommodation Was Reasonable ................................ 11

    3.  The VA Failed to Engage in Good Faith Interactive Process .................. 11

  C.  SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S RETALIATION
CLAIM    13

    1.  Legal Standard for Federal Sector Retaliation Claims .......................... 13

    2.  Protected Activity Clearly Established .............................................. 13

    3.  Adverse Employment Actions Conclusively Demonstrated ..................... 14

    4.   *Causal Connection Established Through Direct and Circumstantial Evidence* ............................................................................................ 16

    5.   *VA's Non-Retaliatory Justification Is Demonstrably Pretextual* ................... 17

    6.   *The VA's Justifications Are Pretextual As A Matter of Law* ........................... 18

  D.     S<small>UMMARY</small> J<small>UDGMENT</small> S<small>HOULD</small> B<small>E</small> G<small>RANTED</small> O<small>N</small> P<small>LAINTIFF'S</small> H<small>OSTILE</small> W<small>ORK</small> E<small>NVIRONMENT</small> C<small>LAIM</small> ............................................................................. 21

    1.   *Legal Standard for Hostile Work Environment* ............................................... 22

    2.   *Sufficient Evidence Establishes Hostile Environment* ................................... 22

    3.   *Pervasive Pattern of Harassment* ................................................................. 22

  E.  P<small>REEMPTIVE</small> R<small>EBUTTAL TO</small> U<small>NDUE</small> H<small>ARDSHIP</small> D<small>EFENSE</small> ................................... 22

    1.   *Legal Standard for Undue Hardship* ............................................................. 22

    2.   *The VA Failed to Establish Undue Hardship* ................................................ 23

    3.   *Failure to Engage in Good Faith Assessment* ............................................... 25

**V.    CONCLUSION** .................................................................................**25**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

### CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)-----------------------------------6

*Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) ----------------------------- 11

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) -----------------------8

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) ----------------------------13, 14

*Clark v. Library of Cong.*, 750 F.2d 89, 90 (1984) ----------------------------------------- 15

*Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001) ---------------------------------8

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003)--------------------------------- 21

*Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 971 (Fed. Cir. 2009) ------------------------- 16

*Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) ------------------------------- 19

*France v. Johnson*, 795 F.3d 1170 (9th Cir. 2015) ----------------------------------- 17, 18, 21

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1998) ------------------ 16, 17, 18, 19

*Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012) ------------------------------------- 17

*Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)------------------------------------ 13

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001)---------------8, 11, 23, 24

*Irigoyen-Briones v. Holder*, 582 F.3d 1062, 1080-81 (9th Cir. 2009)----------------------- 19

*Lane Bryant v. United States*, 35 F.3d 1570, 1574 (Fed. Cir. 1994) ----------------------- 20

*Loeffler v. Frank*, 486 U.S. 549, 558-59 (1988) --------------------------------------------- 20

*Lovejoy-Wilson v. NOCO Motor Fuel*, Inc., 263 F.3d 208, 221 (2d Cir. 2001)------------ 24

*Mattioda v. Nelson*, 98 F.4th 1164 (9th Cir. 2024) ------------------------------------------ 22

*Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017)---------------------- 21

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)------------------------------1, 18, 20

*Miller v. DOJ*, 842 F.3d 1252 (Fed. Cir. 2016)---------------------------------------------- 17

*Morton v. United Parcel Service, Inc.*, 272 F.3d 1249, 1252 (9th Cir. 2001) ------------- 25

*Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) --------------------- 23

*Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)-------------------------- 16

*Ray v. Henderson*, 217 F.3d 1234, 1241-43 (9th Cir. 2000) ---------------------------------- 15

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) -----------------------17, 19

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)-----------------------16, 21

*United States v. Leopard*, 936 F.2d 1138, 1143 (10th Cir. 1991) ---------------------------- 21

*US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002) ---------------------------------- 23

*Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054 (9th Cir. 2002) ---------------- 17, 18, 19

*Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007)-------------------------6

*Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) -------------------------7

*Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) ---------------------- 23

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) ----------------------------------------- 16

## STATUTES

29 U.S.C. § 705(9)(B)------------------------------------------------------------------7

42 U.S.C. § 12102(4)(A) --------------------------------------------------------- 6, 10

42 U.S.C. § 12102(4)(E)(i)-------------------------------------------------------------7

42 U.S.C. § 12111(10)(B) -----------------------------------------------------------23, 24

42 U.S.C. § 12111(8)----------------------------------------------------------------------8

## RULES

Fed. R. Civ. P. 56(a)-----------------------------------------------------------------------6

## REGULATIONS

29 C.F.R. § 1614.203(c)(1)----------------------------------------------------------- 10

29 C.F.R. pt. 1630 ------------------------------------------------------------------- 11

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I.---------------------------------------------------------------- 15

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    (23cv1892)

1

## I.  INTRODUCTION

2      This case presents clear and undisputed evidence of disability discrimination, failure

3   to accommodate, and retaliation against Dr. Allison M. Gill, a dedicated federal employee

4   with documented Post-Traumatic Stress Disorder ("PTSD") and generalized anxiety

5   disorder. Through the sworn testimony of her supervisor Colonel Patrick Grady

6   ("Grady"), his supervisor Colonel Patrick Picardo ("Picardo"), and documentary

7   evidence, Plaintiff has established each element of her claims. With Dr. Gill's evidence

8   established, the burden of proof shifts to the employer. *McDonnell Douglas Corp. v.*

9   *Green*, 411 U.S. 792, 802 (1973).

10     Additionally, this case presents a compelling factual record warranting summary

11  judgment on Dr. Allison M. Gill's claims of disability discrimination, failure to

12  accommodate, and retaliation under the Rehabilitation Act of 1973. The evidence

13  establishes, through direct supervisory admissions and documentary records, that the

14  Defendant deliberately targeted a qualified employee with documented PTSD through

15  increasingly restrictive conditions not imposed on similarly situated employees.

16  Supervisor Patrick Grady's deposition testimony provides dispositive evidence of both

17  discriminatory intent and pretext, including explicit acknowledgments that Dr. Gill was

18  singled out for unique restrictions despite her successful job performance. The temporal

19  relationship between Dr. Gill's accommodation requests, protected EEO activity, and the

20  VA's adverse actions further supports findings of both discrimination and retaliation. With

21  undisputed evidence establishing each element of Plaintiff's claims, and the Defendant's

22  shifting explanations demonstrating pretext as a matter of law, summary judgment is

23  appropriate to remedy the Defendant's clear violations of federal disability law.

## II.  BACKGROUND

24

25  ### A. DR. GILL'S FEDERAL EMPLOYMENT AND SERVICE RECORD

26     Plaintiff Allison M. Gill, Ph.D., was employed by the Department of Veterans Affairs

27  ("VA") from February 2009 until her removal in March 2020. During that time, she served

28  as a Health System Specialist at pay level GS-14, providing critical liaison services with

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT      (23cv1892)

the Department of Defense's TRICARE program. Dr. Gill worked at the TRICARE Regional Office in San Diego, California, a Department of Defense facility located at 401 West A Street. Prior to the events at issue, Dr. Gill consistently received performance reviews of "fully successful" and "exceptional," along with corresponding bonus compensation for her successful performance. Barberena Depo. 36:12-37:8 at 2-3; Barberena Depo., Ex. 4 at 7-8, Ex. 5 at 9, , Ex. 7 at 10, Ex. 9 at 14.

From approximately 2015 to 2018, Dr. Gill worked under the direct supervision of Alejandro Barberena, Director of the VA/Department of Defense Medical sharing office. On February 17, 2019, Patrick Grady became Dr. Gill's direct supervisor, with Patrick Picardo serving as her second-line supervisor. Prior to Mr. Grady's supervision, Dr. Gill maintained a compressed work schedule with one day of telework per two-week pay period.

## B. DR. GILL'S DISABILITY STATUS

Dr. Gill has been diagnosed with PTSD and generalized anxiety disorder, both qualifying disabilities under the Rehabilitation Act of 1973. The VA had previously evaluated Dr. Gill with a 70% disability rating for her PTSD, which was later increased to 100% effective April 16, 2020. Gill Depo., Ex. 23 at 43. Dr. Gill's medical documentation confirmed her condition as required by applicable regulations. Mr. Grady testified to his awareness of Dr. Gill's "moderate to severe PTSD symptoms" as of April 29, 2019, as well as his understanding of PTSD from his military and TRICARE experience.

## C. DIRECTED REASSIGNMENT AND ACCOMMODATION PROCESS

On April 3, 2019, Mr. Grady and Mr. Picardo informed Dr. Gill that her position was being relocated from San Diego to Washington, D.C., effective October 1, 2019. The stated reason for this reassignment was a "modernization effort of the Defense Health Agency, DHA, TRICARE Health Plan, which functionally reorganized assigning the leadership of the administration and management of all TRICARE purchased care contracts primarily at the DHA Falls Church, Virginia, location." Gill Depo., Ex. 11 at 29.

Following this notification, Dr. Gill initiated and fully participated in a series of reasonable accommodation ("RA") requests:

1. On April 26, 2019, Mr. Grady approved Dr. Gill for three telework days per pay period, rather than the full-time telework she had requested. Gill Depo., Ex. 5 at 22.

2. On April 29, 2019, Dr. Gill made her first formal request for reasonable accommodation of 100% telework due to her PTSD. Gill Depo., Ex. 6 at 23.

3. On May 6, 2019, Dr. Gill submitted a written request for accommodation, which Mr. Grady received and acknowledged by email on May 7, 2019. Grady Depo., Ex. 20 at 148, Ex. 21 at 108.

4. On May 9, 2019, Dr. Gill received provisional Family and Medical Leave Act ("FMLA") leave. Gill Depo., Ex. 8 at 24.

5. On May 22, 2019, the VA requested medical documentation in support of the May 6, 2019, RA request, which was promptly completed and returned by Michelle Kerouac, N.P. Gill Depo. Ex. 9 at 26-27.

6. On May 31, 2019, Dr. Paul Krebs submitted a medical letter in support of Dr. Gill's requests. Gill Depo., Ex. 10 at 28.

7. On June 10, 2019, the VA acknowledged that Dr. Gill provided medical documentation as requested, 35 days after the original RA request. Grady Depo. 102:18-103:14 at 61-62.

8. On July 26, 2019, the VA denied the May 6, 2019, RA request, and it granted three days of telework instead, through August 5, 2019, while Dr. Gill was on FMLA leave. Gill Depo., Ex. 13 at 31.

9. On August 12, 2019, Dr. Gill sent an email to the RA coordinator with a supporting letter from her mental health provider. Gill Depo., Ex. 15 at 32.

10. On August 20, 2019, Dr. Gill requested leave without pay ("LWOP"). Mr. Grady approved the request the same day. Gill Depo., Ex. 18 at 37.

11. On August 22, 2019, Dr. Paul Krebs submitted a medical letter in support of Dr. Gill's requests. Gill Depo., Ex. 17 at 34.

12. On September 12, 2019, Mr. Grady requested additional medical documentation to support Dr. Gill's LWOP request. That same day Dr. Gill, through her attorney, provided the requested documentation. The next day the VA approved 100% telework even though Dr. Gill was not working because she was already on LWOP. Gill Depo., Ex. 18 at 35-36.

13. On September 18, 2019, Dr. Paul Krebs submitted a medical letter in support of Dr. Gill's requests. Gill Depo., Ex. 19 at 40.

14. On November 26, 2019, Patrick Grady signed another denial of Dr. Gill's 100% telework RA request. Gill Depo., Ex. 21. at 41-42.

15. On December 20, 2019, Mr. Picardo denied Dr. Gill's final RA, stating that, despite their failure to determine the requirements of Dr. Gill's position, "physical presence in the Washington, D.C. office is required." Picardo Depo., Ex. 56 at 122.

From May 9, 2019, through August 2, 2019, Dr. Gill took leave under the Family and Medical Leave Act ("FMLA"). Gill Depo., Ex. 8 at 25; Gill Depo., Ex. 15 at 32;

Mr. Grady imposed thirteen specific conditions on Dr. Gill's telework accommodation that were not required of other employees. Grady Depo., Ex. 29 at 111. Despite these conditions, Mr. Grady acknowledged in his deposition testimony that Dr. Gill successfully performed all essential functions of her position remotely. Because of these aggressively targeted restrictions, which further triggered Dr. Gill's PTSD and general anxiety disorder, she requested leave without pay on August 20, 2019, since her job was going to move to Washington, D.C. anyway. Gill Depo., Ex. 18 at 38.

**D. INVESTIGATION AND SUBSEQUENT ACTIONS**

Since November 2017, Dr. Gill had operated a podcast initially titled "Mueller, She Wrote" and later renamed "The Daily Beans." In this podcast, Dr. Gill never revealed identifying information such as her real name or government title.

On August 6, 2019, Mr. Grady conducted an unprecedented fact-finding investigation into Dr. Gill's activities while she was on FMLA leave, including into her podcast. During this session, Mr. Grady noted that Dr. Gill was "not able to be in the office" and that her

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT          (23cv1892)

1  limitations included an "inability to concentrate, focus, speak, and interact with others."
2  Mr. Grady later testified that his investigation was prompted by his belief that Dr. Gill's
3  interactions on her podcast contradicted her accommodation request for remote work due
4  to PTSD-related difficulties with interpersonal interactions. Mr. Grady subsequently
5  admitted that there are differences between interacting with people in an office
6  environment versus in other settings.

7  Following this investigative session, Dr. Gill contacted an EEO counselor on August
8  6, 2019. Gill Depo., Ex. 29 at 44. On August 20, 2019, Dr. Gill formally notified her
9  supervisor of her EEO counseling appointment, and on November 21, 2019, she filed a
10  formal EEO complaint. First Amend. Compl., page 13, ECF No. 9-1. Mr. Picardo testified
11  that Dr. Gill's case was the only EEO investigation in which he had ever participated.
12  Picardo Depo. 145:10-11 at 120.

13  After the fact-finding session, Dr. Gill requested LWOP, for which she was required
14  to provide additional medical documentation. This LWOP was signed on September 25,
15  2019, lasting until November 23, 2019. Ex. F at 126. During this period, Dr. Gill
16  communicated with Human Resources to explore job reassignment possibilities within the
17  VA but was unsuccessful in securing an alternative position which would allow her to stay
18  in San Diego.

19  On March 19, 2020, Dr. Gill was formally notified of her removal from federal service,
20  effective March 25, 2020, shortly before the VA increased her disability rating from 70%
21  to 100%, effective April 16, 2020. Ex. G at 136.

22  **E. EEOC ADMINISTRATIVE APPEAL EXHAUSTED**

23  On November 21, 2019, Dr. Gill filed VA Form 4939 Complaint of Employment
24  Discrimination with the Equal Employment Opportunity Commission alleging
25  discrimination, disparate treatment, harassment, hostile work environment, and reprisal
26  for filing the complaint. First Amend. Compl., pages 4,5,7,9,13, ECF No. 9-1. On June
27  28, 2021, the VA denied Dr. Gill's complaint. *Id*. at page 3. Dr. Gill timely filed an appeal.
28

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT      (23cv1892)

*Id.* The VA denied Dr. Gill's appeal on July 17, 2023, and issued the "Right to Sue" letter. *Id.* at pages 9-11.

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit." *Id.*

While Plaintiff's claims arise under the Rehabilitation Act, courts consistently apply ADA standards when analyzing Rehabilitation Act claims. See Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act."); Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in the analysis of rights and obligations created by the two Acts."); 29 U.S.C. § 791(f) (incorporating ADA standards into Rehabilitation Act). Accordingly, precedent interpreting either statute is applicable to Plaintiff's claims.

## IV. ARGUMENT

## A. SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM

To establish disability discrimination under the Rehabilitation Act, a plaintiff must show: (1) they are a person with a disability; (2) who is otherwise qualified for employment; and (3) suffered discrimination because of their disability. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). As amended by the ADA Amendments Act of 2008 ("ADAAA"), a disability should be construed "in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). Further, the ADAAA specifically rejected the more restrictive standards previously applied by courts. See *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009).

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    (23cv1892)

### 1. Dr. Gill Has a Qualifying Disability

A qualifying disability exists when an individual has: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 705(9)(B). Congress explicitly directed that the determination of whether an impairment substantially limits a major life activity "shall be made without regard to the ameliorative effects of mitigating measures," including "learned behavioral or adaptive neurological modifications." 42 U.S.C. § 12102(4)(E)(i). The Ninth Circuit has recognized that PTSD qualifies as a disability when it substantially limits major life activities such as concentrating, thinking, communicating, and interacting with others. See *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014). As demonstrated below, the undisputed evidence conclusively establishes that Dr. Gill's PTSD constitutes a qualifying disability under these legal standards, satisfying this element of her claims as a matter of law.

    a. The VA rated Dr. Gill at 70% disability for PTSD during the period of this dispute. Ex. E at 124.

    b. Mr. Grady acknowledged awareness of Dr. Gill's "moderate to severe PTSD symptoms." Grady Depo. 88:18-89:22 at 59-60.

    c. Medical documentation confirmed her condition. Gill Depo. Ex. 9 at 26-27, Ex. 10 at 28.

    d. Mr. Grady testified to his understanding of PTSD from military and Tricare experience. Grady Depo. 83:13- 84:12 at 56-57.

    e. The VA increased Dr. Gill's disability rating from 70% to 100% shortly after the relevant period, effective April 16, 2020. Gill Depo., Ex. 23 at 43.

    f. fThe VA's post-termination increase of Dr. Gill's disability rating from 70% to 100%, effective April 16, 2020 (Gill Depo., Ex. 23 at 43), constitutes a remarkable admission by the agency. This determination directly contradicts any potential assertion that Dr. Gill's disability was insufficiently severe to warrant the requested accommodations. The close temporal proximity between her

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT         (23cv1892)

1    separation from employment and this significant disability rating increase
2    further evidences the Agency's awareness of her legitimate disability needs and
3    supports a finding of discriminatory intent.

### 2. Dr. Gill Was Qualified for Her Position

Under the Rehabilitation Act, a plaintiff must demonstrate that she is a "qualified individual," defined as one who "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001). The determination of whether an individual is qualified focuses on two inquiries: (1) whether the individual possesses the requisite skills, education, and training for the position; and (2) whether the individual can perform the essential functions of the position with or without reasonable accommodation. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007). Courts afford considerable weight to the employer's judgment regarding essential functions, but this judgment is not dispositive, particularly when contradicted by performance evaluations and supervisory assessments. *Cripe v. City of San Jose*, 261 F.3d 877, 887 (9th Cir. 2001). As the evidence below conclusively demonstrates, Dr. Gill not only possessed the requisite qualifications but consistently performed all essential functions of her position successfully, even receiving performance awards, thereby establishing this element of her claim beyond dispute.

a. Mr. Grady rated her "fully successful" in all performance elements for FY2019. Grady Depo. 49:3-17 at 50, Ex. 16. at 104-105.

b. Mr. Grady admitted Dr. Gill was fully successful at her job. Grady Depo. 127:19-128:19 at 75-76.

c. Dr. Gill received multiple performance-based monetary awards. Grady Depo. 53:16-54:11 at 51-52, Ex. 17 at 106. Barberena Depo., Ex. 5 at 9, Ex. 7 at 10, Ex. 9 at 14.

d. Dr. Gill successfully served as Acting Director when needed. Grady Depo. 57:23-58:18 at 53-54.

e. Dr. Gill's prior supervisor, Alejandro Barberena gave her "exceptional" and "fully successful" ratings. Barberena Depo. 36:15-21 at 2, 37:1-3 at 3, 45:14-46:24 at 4-5, Ex. 4 at 6, Ex. 8 at 11.

f. At no time was Dr. Gill disciplined for her work.

**3. Dr. Gill Suffered Discrimination Because of Her Disability**

The evidence conclusively demonstrates discriminatory treatment through both direct and circumstantial evidence:

a. Mr. Grady explicitly admitted creating uniquely restrictive conditions targeting Dr. Gill: "That's right. She was the only one on it at the time." Grady Depo. 254:21-25 at 94.

b. The discriminatory intent is further evidenced by Mr. Grady's admission that he deliberately imposed more stringent requirements than necessary, acknowledging that a five-ring phone response requirement was more difficult to meet than a seven-ring standard. Grady Depo. 271:4-22 at 102.

c. Mr. Grady acted without adequate foundation, admitting he:

   i. Failed to review Dr. Gill's prior performance evaluations. Grady Depo. 232:21-233:25 at 89-90.

   ii. Lacked fundamental knowledge of her work environment. Grady Depo. 138:17-139:10 at 78-79.

   iii. Based significant restrictions on a single incident. Grady Depo. 243:11-15 at 91.

d. The pretextual nature of the VA's justifications is demonstrated by Mr. Grady's contradictory testimony regarding:

   i. His knowledge of Dr. Gill's PTSD. While Mr. Grady did not explicitly contradict himself in a single statement, there are several instances where his testimony shows inconsistencies or evolving understanding of Dr. Gill's PTSD and its impact on her work. These inconsistencies primarily revolve around when he became aware of her condition, the nature of her

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT        (23cv1892)

limitations, and how her PTSD affected her in different environments. "Q: At the time of your meeting in San Diego with Dr. Gill, were you aware that she had PTSD? A: So I don't remember knowing that before or after. I believe Allison shared that with me at some point[.]" Grady Depo. 76:14-23 at 55. Then after reviewing an Exhibit dated May 6, 2019, which documented Dr. Gill's PTSD, Mr. Grady changed his tune, "It would have meant that I understood that Allison had PTSD or suffered the symptoms of PTSD." Grady Depo. 89:17-22 at 60; see also Grady Depo. 145:5-17 at 80, 189:8-11 at 84, 191:2-14 at 85, 199:6-20 at 88.

ii. The purported basis for investigating her outside activities. Initially, Mr. Grady stated that the investigation was prompted by concerns about Dr. Gill's ability to interact with people. Grady Depo. 126:23-127:19 at 74-75, 129:7-25 at 77. However, when pressed about the specific limitations Dr. Gill had reported, Mr. Grady's testimony revealed a contradiction. Grady Depo. 183:11-17 at 83. When confronted with this discrepancy, Mr. Grady essentially admitted to misinterpreting or overgeneralizing Dr. Gill's reported limitations. Grady Depo 189:1-11 at 84.

iii. The actual purpose of the telework restrictions. Grady Depo. 189:1-11 at 84, 268:11-270:2 at 99-101. Mr. Grady's justification for the investigation shifted throughout his testimony. At one point, he claimed it was due to a single incident of unresponsiveness from Dr. Gill on May 9, 2019. Grady Depo. 243:11-15 at 91.

## B. SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM

An employer must provide reasonable accommodation to qualified employees with disabilities unless it would impose undue hardship. 29 C.F.R. § 1614.203(c)(1). As interpreted under the ADA Amendments Act of 2008, the definition of disability should be construed in favor of broad coverage. 42 U.S.C. § 12102(4)(A).

### 1. Dr. Gill Requested a Reasonable Accommodation

The evidence establishes proper accommodation requests. Dr. Gill formally requested telework accommodations through emails and the RA process as delineated above on pages 3 and 4.

### 2. The Requested Accommodation Was Reasonable

The evidence shows telework was reasonable:

a. Mr. Grady admitted Dr. Gill performed all essential functions "fully successfully", including when working remotely. Grady Depo. 127:19-128:13 at 75-76.

b. Other employees successfully teleworked, including from Virginia. Ex. F at 128-129. One employee in Florida was granted 100% telework. Gill Depo., Ex. 3 at 20:11-14.

c. No evidence suggests telework would cause undue hardship to the VA.

d. The VA later transitioned many employees to telework during COVID-19, an increase from 50,000 employees to 135,000 employees.[1]

### 3. The VA Failed to Engage in Good Faith Interactive Process

In *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) the Ninth Circuit found that interactive process requires good faith exploration of possible accommodations. Further, the EEOC has made clear that the interactive process requires good faith exploration of all potential accommodations. 29 C.F.R. pt. 1630. Finally, the duty to engage in the interactive process continues throughout the employee's tenure. *Humphrey*, 239 F.3d at 1138. Here, the record establishes, through the VA's own admissions, systematic failure to engage in good faith:

a. Mr. Grady proceeded without fundamental knowledge of Dr. Gill's position,

---

[1] Calvin Hennick, *The Pivot to Mass Remote Work: VA Tackles a 'Once in a Century' Event*, FedTech (August 3, 2020) https://fedtechmagazine.com/article/2020/08/pivot-mass-remote-work-va-tackles-once-century-event

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT          (23cv1892)

testifying he "didn't have a full understanding of what they did." Grady Depo. 139:9-10 at 79.

b. The VA's decision-making process was fatally flawed:

    i. Failed to review performance history before imposing restrictions. Grady Depo. 232:21-233:25 at 89-90.

    ii. Based significant accommodation restrictions on a single incident, which Mr. Grady admitted was a "major part" of his decision. Grady Depo. 243:11-15 at 91.

    iii. Implemented restrictions while acknowledging frustration with the accommodation process. Grady Depo. 244:2-245:5 at 92-93.

c. The VA's purported interactive process was pretextual:

    i. Initially claimed restrictions were "simply" about availability. Grady Depo. 267:15-21 at 98.

    ii. Later admitted additional motivations. Grady Depo. 268:18-269:13 at 99-100.

    iii. Failed to consider less restrictive alternatives. It's worth noting that Grady later acknowledges that some of the restrictions might have been more stringent than necessary. For example, when discussing the requirement to answer phone calls within five rings, he admitted, "Sure. It could have been seven." Grady Depo. 271:10 at 102.

d. Mr. Grady delayed responding to accommodation request. Grady Depo., Ex. 25 at 109; Grady Depo. 107:4-108:3 at 63-64.

e. Mr Grady admitted that he imposed punitive conditions on Dr. Gill not required of others. Grady Depo. 257:18-258:11 at 95-96, 259:9-14 at 97. Further, the evidence shows that after Mr. Grady claimed to have extended the punitive restrictions to the other workers, **they in fact did not**. Ex. F at 133.

f. He admitted using a single incident as "major" factor in imposing restrictions. Grady Depo. 243:11-15 at 91.

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT        (23cv1892)

g. Mr. Grady conducted a retaliatory investigation into Dr. Gill's private activities. Gill Depo. 64:6-13 at 16, 162:20-163:11 at 17-18; Grady Depo. 181:23-182:13 at 81-82, 195:12-196:6 at 86-87, Ex. 31 at 111-112; Picardo Depo. 73:18-24 at 119.

## C. SUMMARY JUDGEMENT SHOULD BE GRANTED ON PLAINTIFF'S RETALIATION CLAIM

### 1. Legal Standard for Federal Sector Retaliation Claims

The Supreme Court has established that federal sector retaliation claims under the Rehabilitation Act require proof that: (1) the employee engaged in protected activity; (2) the employee suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and adverse action. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006).

### 2. Protected Activity Clearly Established

The evidence unequivocally establishes that Dr. Gill engaged in statutorily protected activities, satisfying the first prong of the retaliation analysis under the Rehabilitation Act. The record documents two distinct categories of protected conduct: (1) multiple formal requests for reasonable accommodation related to her documented disability, and (2) engagement in the EEO process, including initial counseling and formal complaint filing. The Ninth Circuit has consistently recognized both categories as protected activities that trigger anti-retaliation provisions. See *Coons*, 383 F.3d at 887 (holding that requesting reasonable accommodation constitutes protected activity); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (establishing that EEO counseling contact is protected activity sufficient to trigger anti-retaliation provisions). As detailed above on pages 3 and 4, Dr. Gill's protected activities are thoroughly documented in the record through contemporaneous documentation, supervisory acknowledgments, and VA records, thereby conclusively establishing this element of her retaliation claim as a matter of law.

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT     (23cv1892)

(a) A<small>CCOMMODATION</small> R<small>EQUESTS</small>

    a.  On April 26, 2019, Mr. Grady approved Dr. Gill for three telework days per pay period, rather than the full-time telework she had requested. Gill Depo., Ex. 5 at 22.

    b.  On April 29, 2019, Dr. Gill made her first formal request for reasonable accommodation of 100% telework due to her PTSD. Gill Depo., Ex. 6 at 23.

    c.  On May 6, 2019, Dr. Gill submitted a written request for accommodation, which Mr. Grady received and acknowledged by email on May 7, 2019. Grady Depo., Ex. 20 at 148, Ex. 21 at 108.

    d.  On May 9, 2019, Dr. Gill requested and received provisional Family and Medical Leave Act ("FMLA") leave. Gill Depo., Ex. 8 at 24.

    e.  On August 20, 2019, Dr. Gill requested leave without pay ("LWOP"). Mr. Grady approved the request the same day. Gill Depo., Ex. 18 at 37.

(b) EEO A<small>CTIVITY</small>

    a.  Dr. Gill contacted an EEO counselor on August 6, 2019. Gill Depo., Ex. 29 at 44.

    b.  On August 20, 2019, Dr. Gill formally notified her supervisor of her EEO counseling appointment. Gill Depo., Ex. 18 at 37.

    c.  On November 21, 2019, Dr. Gill filed a formal EEO complaint. First Amend. Compl., page 13, ECF No. 9-1.

**3. Adverse Employment Actions Conclusively Demonstrated**

Under the anti-retaliation provisions of the Rehabilitation Act and the ADA prohibit a broader range of employer conduct than the substantive anti-discrimination provisions. *Burlington N. & Santa Fe Ry.*, 548 U.S. at 67. An employer action is "adverse" in the retaliation context if it "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. The Ninth Circuit has explicitly rejected standards requiring a "tangible" or "ultimate" employment action, recognizing that retaliatory adverse actions encompass a spectrum of employer conduct affecting "terms,

conditions, or privileges" of employment. *Ray v. Henderson*, 217 F.3d 1234, 1241-43 (9th Cir. 2000). Actions such as implementing uniquely restrictive work conditions, conducting intimidating investigations into protected activities, and imposing onerous documentation requirements all constitute adverse employment actions in the retaliation context. See, e.g., *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007) (holding that a targeted investigation can constitute an adverse employment action). The record contains multiple, well-documented instances of employer conduct that meet this legal standard, each independently sufficient to satisfy this element of Dr. Gill's retaliation claim.

(a) IMPOSITION OF UNIQUELY RESTRICTIVE CONDITIONS

i.  Mr. Grady admitted creating telework restrictions specifically, and only for Dr. Gill: "That's right. She was the only one on it at the time." Grady Depo. 254:21-25 at 94.

ii. Mr. Grady acknowledged implementing deliberately onerous requirements. Grady Depo. 271:4-23 at 102.

iii. Mr. Grady claimed to have extended the punitive restrictions to the other workers, however he did not. Ex. F at 133.

(b) RETALIATORY INVESTIGATION

i.  Mr. Grady conducted an investigation into protected outside activities. Grady Depo. 118:19-119:3 at 67-68, 123:20-124:2 at 71-72. Dr. Gill's political podcast and appearances are clearly protected under the Free Speech Clause of the United States Constitution and the Court found that "the employee was only required to show that the investigation was a factor in the decision." *Clark v. Library of Cong.*, 750 F.2d 89, 90 (1984); U.S. Const. amend. I.

ii. Mr. Grady allegedly based the investigation entirely on a single piece of information from employee Edith "Edie" Bean who told Mr. Grady that, "you probably need to check this out. [Gill's podcast]" Grady Depo. 116:10-15 at 65, 117:11-14 at 66, 119:18 at 68.

iii. According to Mr. Grady, Edith Bean often shared information about Dr. Gill's TRICARE work, and he admitted that a podcast is not TRICARE work. Grady

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT        (23cv1892)

Depo. 120:3-13 at 69.

iv. Mr. Grady did not perform any other investigations of any other employees' personal lives. Grady Depo. 120:22-121:7 at 69-70.

### 4. Causal Connection Established Through Direct and Circumstantial Evidence

To establish a causal connection between protected activity and adverse employment actions, a plaintiff may rely on either direct or circumstantial evidence. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Direct evidence typically consists of statements or actions by decision-makers that explicitly demonstrate retaliatory animus. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). When direct evidence exists, it alone can establish causation without further proof. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Alternatively, circumstantial evidence such as temporal proximity, the employer's knowledge of the protected activity, or a pattern of antagonism can support an inference of causation. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (finding that a proximity of four months was sufficient to support an inference of causation); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (holding that adverse actions occurring within three to eight months of protected activity sufficiently establish causation). The Ninth Circuit has emphasized that courts must consider "the record as a whole" when evaluating causation. *Yartzoff*, 809 F.2d at 1377. In this case, as detailed below, both direct and circumstantial evidence overwhelmingly demonstrate the requisite causal connection, establishing this element beyond genuine dispute.

(a) DIRECT EVIDENCE

Mr. Grady admitted that he: acted out of "frustration" (Grady Depo. 244:22-245:11 at 92-93), targeted Dr. Gill specifically (Grady Depo. 254:21-25 at 94), and ussed a single incident as "major" factor for restrictions. Grady Depo. 243:11-15 at 91.

(b) TEMPORAL PROXIMITY

The Federal Circuit recognizes temporal proximity as evidence of causation. *Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 971 (Fed. Cir. 2009). The timeline of events

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT       (23cv1892)

further supports a finding of discriminatory intent and pretext. The record establishes that following the discovery of Dr. Gill's podcast activities by supervisor Grady in August 2019, there was an immediate escalation in restrictive conditions imposed on her telework arrangement. The fact-finding investigation was initiated on August 6, 2019, and by August 15, 2019, Dr. Gill was presented with uniquely restrictive telework conditions. This compressed timeline, coupled with Mr. Grady's admission that he had already determined Dr. Gill would be removed prior to conducting any meaningful investigation, provides compelling evidence of pretextual decision-making.

(c) PATTERN OF ESCALATING RESTRICTIONS

The D.C. Circuit has held that a pattern of escalating adverse actions following protected activity supports a finding of retaliatory intent. *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).

Here, the evidence clearly demonstrates a pattern: (1) Initial denial of accommodation, (2) Investigation into personal activities; (3) Imposition of unique restrictions; (4) Repeatedly required additional medical documentation.

**5. VA's Non-Retaliatory Justification Is Demonstrably Pretextual**

Under Federal Circuit precedent, summary judgment is appropriate where evidence demonstrates pretext. *Miller v. DOJ*, 842 F.3d 1252, 1257-58 (Fed. Cir. 2016). Pretext is well discussed in Ninth Circuit precedent. *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1063 (9th Cir. 2002) (holding that unexplained or inadequately explained adverse employment actions give rise to inference of discrimination); *Godwin*, 150 F.3d at 1222 (inconsistent explanations can demonstrate pretext.)

Further, the Ninth Circuit recognizes that multiple pieces of evidence, which might be insufficient when viewed individually, can collectively create a 'convincing mosaic' of discrimination. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *France v. Johnson*, 795 F.3d 1170 (9th Cir. 2015).

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT    (23cv1892)

(a) SHIFTING EXPLANATIONS

i. Mr. Grady initially claimed the extreme, new restrictions he signed on August 12, 2019, were "simply" about availability. Grady Depo. 267:15-21 at 98.

ii. Mr. Grady said he was wrong to use the word "simply." Grady Depo. 269:7-13 at 100.

iii. Mr. Grady admitted that he did not need the level of new restrictions, but he was frustrated by a May 9, 2019, incident with Dr. Gill. Grady Depo. 271:4-22 at 102.

(b) INADEQUATE FOUNDATION

i. Mr. Grady failed to review Dr. Gill's performance history. Grady Depo. 232:21-233:25 at 89-90.

ii. Mr. Grady admitted that he lacked understanding of Dr. Gill's essential job functions. Grady Depo. 138:17-139:10 at 78-79.

iii. Based significant restrictions on a single incident. Grady Depo. 243:11-15 at 91, 271:4-22 at 102.

### 6. The VA's Justifications Are Pretextual As A Matter of Law

Under the *McDonnell Douglas* burden-shifting framework, once a plaintiff establishes a prima facie case and the defendant articulates a legitimate, non-discriminatory reason for its actions, the plaintiff must demonstrate that the employer's proffered justification is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 802-04. In the Ninth Circuit, a plaintiff may establish pretext either: (1) directly, by showing that a discriminatory reason more likely motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is "unworthy of credence." *Villiarimo*, 281 F.3d at 1062). Evidence of "shifting explanations," "inconsistent justifications," or "inadequately explained adverse employment actions" give rise to an inference of pretext. *Id.* at 1063; *Godwin*, 150 F.3d at 1222. The Ninth Circuit has further recognized that multiple pieces of evidence, which might be insufficient when viewed individually, can collectively create a "convincing mosaic" of discrimination. *France*, 795 F.3d at 1175. (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147-48 (2000)). As demonstrated below, the VA's

explanations for its treatment of Dr. Gill contain multiple hallmarks of pretext recognized by courts as sufficient to establish this element as a matter of law.

(a) <span>S</span>HIFTING AND <span>I</span>NCONSISTENT <span>E</span>XPLANATIONS

The Supreme Court has established that evidence of shifting explanations for adverse employment actions can demonstrate pretext. *Reeves*, 530 U.S. at 147  ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") The D.C. Circuit has held that inconsistent or contradictory explanations support finding pretext in federal employment cases. *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) (finding pretext where agency's "inconsistent statements" undermined its proffered reasons); *Villiarimo*, 281 F.3d at 1063) (holding that unexplained or inadequately explained adverse employment actions give rise to inference of discrimination); *Godwin*, 150 F.3d at 1222 (inconsistent explanations can demonstrate pretext.)

Here, Mr. Grady's testimony demonstrates shifting explanations through:

a. Initial claims that restrictions were "simply" about availability. Grady Depo. 267:15-21 at 98; Gill Depo., Ex. 4 at 21.

b. Subsequent admission of additional undisclosed motivations. Grady Depo. 268:18-269:13 at 99-100.

c. Acknowledgment of targeting Dr. Gill specifically before broader application. Grady Depo. 254:21-25 at 94.

(b) <span>I</span>NADEQUATE <span>I</span>NVESTIGATION/<span>D</span>ECISION-<span>M</span>AKING <span>P</span>ROCESS

The Ninth Circuit has recognized that a cursory or inadequate investigation can evidence discriminatory intent in federal sector cases. *Irigoyen-Briones v. Holder*, 582 F.3d 1062, 1080-81 (9th Cir. 2009) (finding agency's inadequate investigation suggested pretext.)

The record demonstrates inadequate investigation through Mr. Grady's admissions that he:

a. Failed to review performance history. Grady Depo. 232:21-233:25 at 89-90.

b. Did not understand essential job functions. Grady Depo. 138:17-139:10 at 78-79.

c. Based significant restrictions on a single incident. Grady Depo. 243:11-15 at 91.

### (c) EVIDENCE OF DISPARATE TREATMENT

The Supreme Court established in *McDonnell Douglas Corp.*, 411 U.S. at 804, that evidence of disparate treatment can establish pretext. This framework applies with equal force in federal sector employment cases. *Loeffler v. Frank*, 486 U.S. 549, 558-59 (1988). The Federal Circuit has consistently held that treating similarly situated federal employees differently supports an inference of discriminatory intent. *Lane Bryant v. United States*, 35 F.3d 1570, 1574 (Fed. Cir. 1994).

The record demonstrates disparate treatment through:

a. Targeted restrictions specific to Dr. Gill. Grady Depo. 254:21-25 at 94; Grady Depo. 257:5-10 at 95.

b. More stringent requirements than necessary. Grady Depo. 271:4-22 at 102.

c. Failure to apply similar restrictions to similarly situated employees at the time of the implementation of restrictions on Dr. Gill. Grady Depo. 254:21-25 at 94; Grady Depo. 257:5-10 at 95.

d. Later allegedly applied the restrictions to other similarly situated employees. Grady Depo. 259:9-14 at 97. However, the evidence shows that, they in fact did not. Ex. F at 133.

### (d) PRIOR KNOWLEDGE OF RELOCATION REFUSAL

The VA's purported justification for requiring Dr. Gill's relocation is further undermined by the Agency's prior knowledge of her unwillingness to relocate. The record establishes that in 2017, Dr. Gill had already declined a promotion opportunity specifically because it would have required relocation to Washington, D.C. (First Amend. Compl. ¶21). This prior knowledge demonstrates that when the VA subsequently directed Dr. Gill's reassignment to Washington D.C. in 2019, it did so with full awareness that such relocation would effectively force her separation from employment, particularly in light of her documented disability and family circumstances.

### (e) "CONVINCING MOSAIC" OF DISCRIMINATORY INTENT

The Ninth Circuit has established that multiple pieces of evidence, which might be insufficient when viewed individually, can collectively create a "convincing mosaic" of discrimination sufficient to overcome summary judgment. *France*, 795 F.3d at 1175. Here, the mosaic includes: (1) Mr. Grady's explicit admission of targeting Dr. Gill with unique restrictions; (2) the temporal proximity between accommodation requests and adverse actions; (3) the investigation into Dr. Gill's protected First Amendment activities; (4) shifting explanations for the denial of accommodations; (5) the hasty implementation of reassignment with deliberately shortened timeframes; and (6) the VA's post-termination increase of Dr. Gill's disability rating to 100%. Viewed collectively, this evidence compellingly establishes discriminatory intent as a matter of law.

### (f) TEMPORAL PROXIMITY AND DIRECT EVIDENCE

#### i. LEGAL FRAMEWORK

In *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003), the Supreme Court held that direct evidence of discriminatory intent strongly supports finding pretext. The Tenth Circuit applies this standard in federal sector cases. *United States v. Leopard*, 936 F.2d 1138, 1143 (10th Cir. 1991). Further, direct evidence of discriminatory intent shifts the burden of proof to the defendant. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Cordova*, 124 F.3d at 1149; see also *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) (direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption".)

#### ii. APPLICATION

Mr. Grady's admissions constitute direct evidence of discriminatory intent:

a. Admitted frustration with accommodation process. Grady Depo. 244:22-245:11 at 92-93.

b. Admitted targeting Dr. Gill specifically. Grady Depo. 254:21-25 at 94.

c. Imposed deliberately onerous requirements. Grady Depo. 271:4-22 at 102.

### D. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S

## HOSTILE WORK ENVIRONMENT CLAIM

### 1.  Legal Standard for Hostile Work Environment

Under the Rehabilitation Act, a hostile work environment claim requires showing: (1) plaintiff belongs to a protected class; (2) was subjected to unwelcome harassment; (3) the harassment was based on disability; (4) the harassment was sufficiently severe or pervasive to alter conditions of employment; and (5) employer liability. *Mattioda v. Nelson*, 98 F.4th 1164 (9th Cir. 2024).

### 2.  Sufficient Evidence Establishes Hostile Environment

The record contains undisputed evidence establishing each element of a hostile work environment claim. Mr. Grady's deposition testimony confirms:

a. Knowledge of Dr. Gill's PTSD disability. Grady Depo. 88:18-89:22 at 59-60.

b. Deliberate imposition of uniquely restrictive conditions. Grady Depo. 254:21-25 at 94.

c. Conducting targeted investigation into protected outside activities. Grady Depo. 118:19-119:3 at 67-68.

d. Imposing deliberately onerous requirements by his own admission. Grady Depo. 271:4-22 at 102.

### 3.  Pervasive Pattern of Harassment

The VA's actions created a pattern of escalating harassment through targeted restrictions not imposed on other employees, intrusive investigation into personal activities while on FMLA leave, shifting explanations and requirements, and intentional exacerbation of known PTSD triggers.

### E.  PREEMPTIVE REBUTTAL TO UNDUE HARDSHIP DEFENSE

To further strengthen Plaintiff's position on the failure to accommodate claim, the Court should preemptively address the Defense's likely assertion of an undue hardship defense. This analysis demonstrates that such a defense is wholly unsupported by the evidence and cannot defeat summary judgment.

### 1.  Legal Standard for Undue Hardship

The Supreme Court has established that the burden of proving undue hardship rests squarely with the defendant. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). This burden is substantial, requiring demonstration that a requested accommodation would impose "significant difficulty or expense" when considered in light of: (1) the nature and cost of accommodation; (2) the overall financial resources of the facility; (3) the overall resources of the covered entity; and (4) the type of operation. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); see also 42 U.S.C. § 12111(10)(B).

### 2. The VA Failed to Establish Undue Hardship

The Ninth Circuit has emphasized that the undue hardship analysis must be individualized and supported by specific, documented evidence rather than generalized assertions about operational impacts. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). When an employer has provided similar accommodations to other employees, courts presume the accommodation would not impose an undue hardship. *Humphrey*, 239 F.3d at 1136. As detailed below, the record is devoid of evidence that could satisfy the VA's substantial burden of establishing undue hardship, particularly in light of the VA's demonstrated ability to provide similar accommodations to other employees.

Further, he VA's undue hardship defense is particularly untenable given its status as one of the federal government's largest agencies, with comprehensive resources and substantial personnel infrastructure. The Department of Veterans Affairs maintains an annual budget exceeding $300 billion and employs more than 400,000 personnel across numerous facilities nationwide.[2] Courts have consistently recognized that an entity's 'overall financial resources' and 'size' are critical factors in evaluating undue hardship

---

[2] Department of Veterans Affairs - Budget in Brief, U.S. DEPARTMENT OF VETERANS AFFAIRS (March 2023)

https://www.va.gov/budget/docs/summary/fy2024-va-budget-in-brief.pdf

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT          (23cv1892)

claims. 42 U.S.C. § 12111(10)(B)(ii)-(iii); see also *Lovejoy-Wilson v. NOCO Motor Fuel*, Inc., 263 F.3d 208, 221 (2d Cir. 2001) (holding that a large entity with substantial resources faces a higher burden in establishing undue hardship). The VA's assertion of undue hardship is especially implausible considering that the accommodation at issue—telework—requires minimal financial expenditure and has been routinely implemented for numerous other employees, including those in comparable positions. See *Humphrey*, 239 F.3d at 1136. The VA's substantial resources and demonstrated ability to accommodate telework arrangements render its undue hardship defense legally insufficient as a matter of law

### (a) ABSENCE OF EVIDENCE REGARDING FINANCIAL OR OPERATIONAL IMPACT

The record is devoid of any evidence that Dr. Gill's requested telework accommodation would impose significant financial costs or operational difficulties on the VA. Notably, the VA produced no documentation of financial impact or resource allocation analysis during discovery, and Mr. Grady testified that Dr. Gill successfully performed all essential functions remotely. Grady Depo. 45:14-47:24 at 46, 48:18-17 at 49, 127:9-128:19 at 75-76; conclusively establishing the accommodation's feasibility. The VA later transitioned a large number of employees to telework during COVID-19, demonstrating the absence of operational barriers to remote work.

### (b) CONTRADICTORY EVIDENCE OF SIMILAR ACCOMMODATIONS

The VA's undue hardship position is fatally undermined by its own employment practices:

i.   A TRICARE Liaison based in Virginia was permitted 100% remote work without relocation requirement. Ex. F at 128-129.

ii.  The VA's purported justification of requiring "face-to-face" communication in Washington D.C. is belied by its willingness to accommodate other employees in remote locations.

iii. The Ninth Circuit has held that providing similar accommodations to other employees strongly evidences the absence of undue hardship. *Humphrey*, 239 F.3d

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT        (23cv1892)

at 1136 (employer's prior accommodation of similar requests indicated feasibility).

### 3. Failure to Engage in Good Faith Assessment

The Ninth Circuit requires employers to demonstrate they engaged in a good faith assessment of potential undue hardship. *Morton v. United Parcel Service, Inc.*, 272 F.3d 1249, 1252 (9th Cir. 2001). Here, the record establishes:

i.   Mr. Grady admitted proceeding without fundamental knowledge of Dr. Gill's position, testifying he "didn't have a full understanding of what they did." Grady Depo. 139:9-10 at 79.

ii.  The VA failed to conduct any documented analysis of operational impact or costs associated with telework accommodation and the VA's subsequent implementation of widespread telework policies conclusively demonstrates the absence of genuine undue hardship concerns.

Given this evidentiary record, the VA cannot, as a matter of law, satisfy its burden of establishing undue hardship, further warranting summary judgment on Plaintiff's failure to accommodate claim.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Plaintiff's favor on her discrimination, failure to accommodate, and retaliation claims. The undisputed evidence establishes liability as a matter of law.

Dated: March 3, 2025

By:    /s/ Ethan Bearman

Ethan Bearman, Esq.,
Attorney for Plaintiff
ALLISON M. GILL

MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT          (23cv1892)